ST. PAUL AREA CHAMBER OF COMMERCE, et al., Appellants,

v.

Frank J. MARZITELLI, as Commissioner of Highways for the State of Minnesota, Respondent,

and

RIP–35E Environmental Defense Fund, defendant in intervention, Respondent.

No. 46998.

Supreme Court of Minnesota.

Sept. 9, 1977.

Ruttenberg, Orren, Griswold & Bernet, Kenneth P. Griswold and Royal C. Orren, St. Paul, for appellants.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Richard G. Mark, Asst. Atty. Gen., Christopher R. Kelley and Stephen F. Befort, Sp. Asst. Attys. Gen., St. Paul, for Marzitelli.

Dayton, Herman & Graham, Charles K. Dayton, and Philip W. Getts, Minneapolis, Minn., for RIP–35E.

Duane J. Crandell, Burnsville, for amicus curiae, The Minn. State Automobile Assn., seeking reversal.

SCOTT, Justice.

This is an appeal from a declaratory judgment. Plaintiffs commenced the action in Ramsey County District Court, seeking a declaration that L.1975, c. 203, is unconstitutional. The matter came before the district court on defendants' motions for a judgment on the pleadings or summary judgment. The district court granted summary judgment in favor of defendants, holding that the statute was constitutional and that the complaint failed to raise a

justiciable controversy. Plaintiffs appeal to this court.

Plaintiff Drive 35E is a nonprofit corporation composed of representatives of business and labor, and established for the purpose of promoting and supporting the completion of a certain portion of the freeway grid in Minnesota. Plaintiff St. Paul Area Chamber of Commerce (Chamber) is a nonprofit corporation existing for the purposes of enhancing and promoting the business climate in the city of St. Paul, and represents the downtown St. Paul business community. The individual plaintiffs are citizens, taxpayers, and residents in the area in question.

Defendant Marzitelli is the former commissioner of highways, who has been succeeded in interest by the present commissioner of transportation, James Harrington. Defendant RIP–35E Environmental Defense Fund is a nonprofit corporation interested in the preservation of certain residential areas near the "Pleasant Avenue Corridor" in St. Paul, and was permitted to intervene as a defendant.

At issue on the merits is the constitutionality of L.1975, c. 203, as amended by L.1976, c. 317. Plaintiffs claim that chapter 203 violates the Supremacy Clause of the United States Constitution, art. VI, clause 2, and Minn.Const. art. 12, § 1. Defendants contend, and the district court found, that this action does not present a justiciable controversy under Minn.St. 555.01 to 555.16 (Uniform Declaratory Judgments Act).

The basic facts are not in dispute. The controversy centers around the construction of Interstate Highway 35E in St. Paul along the "Pleasant Avenue Corridor." This route for 35E was selected in 1957 by the commissioner of highways, and construction continued until 1972, when it was halted by stipulation to permit the preparation of an environmental impact statement. Chapter 203 prohibits any further construction of I–35E in the "Pleasant Avenue Corridor"; removes this route from its previous designation as part of Trunk Highway 390; establishes a new Trunk Highway 382 along the same route, and authorizes the construction of a parkway along this route. Plaintiffs allege that chapter 203 unconstitutionally collides with the Federal interstate highway program. Defendants deny such a collision, and contend that no justiciable controversy exists.

The rule in Minnesota is that a justiciable controversy must exist before the courts have jurisdiction to render a declaratory judgment regarding the constitutionality of a statute. *Port Authority of City of St. Paul v. Fisher,* 269 Minn. 276, 132 N.W.2d 183 (1964); *Arens v. Village of Rogers,* 240 Minn. 386, 61 N.W.2d 508 (1953), appeal dismissed, 347 U.S. 949, 74 S.Ct. 680, 98 L.Ed. 1096 (1954). The requirements for a justiciable controversy have been variously stated in prior cases of this court. In *Seiz v. Citizens Pure Ice Co.,* 207 Minn. 277, 281, 290 N.W. 802, 804 (1940), we held:

"Proceedings for a declaratory judgment must be based on an actual controversy. The controversy must be justiciable in the sense that it involves definite and concrete assertions of right and the contest thereof touching the legal relations of parties having adverse interests in the matter with respect to which the declaration is sought, and must admit of specific relief by a decree or judgment of a specific character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Mere differences of opinion with respect to the rights of parties do not constitute such a controversy."

In *State ex rel. Smith v. Haveland,* 223 Minn. 89, 92, 25 N.W.2d 474, 477, 174 A.L.R. 544, 547 (1946), we added the following to the *Seiz* formulation:

"Among the essentials necessary to the raising of a justiciable controversy is the existence of a genuine conflict in the tangible interests of the opposing litigants. Complainant must prove his possession of a legal interest or right which is capable of and in need of protection from the claims, demands, or objections emanating from a source competent legally to place such legal interest or right

in jeopardy. Although complainant need not necessarily possess a cause of action (as that term is ordinarily used) as a basis for obtaining declaratory relief, nevertheless he must, as a minimum requirement, possess a bona fide legal interest which has been, or with respect to the ripening seeds of a controversy is about to be, affected in a prejudicial manner."

When the constitutionality of a statute is challenged, the litigant bringing the challenge must, in order to invoke the jurisdiction of the court, be able to show that the statute is, or is about to be, applied to his disadvantage. *State ex rel. Smith v. Haveland, supra*;[1] *Lee v. Delmont*, 228 Minn. 101, 36 N.W.2d 530 (1949).

■ The inquiry in the present case must focus upon whether plaintiffs have asserted legally cognizable interests which will, in some way distinguished from the general public, be interfered with or destroyed by chapter 203. The plaintiffs state their interests to be these:

(1) As users of the highways, they will be denied the benefit of using 35E in St. Paul;

(2) In reliance on 35E being completed, they have expended "millions of dollars" in the construction of buildings and businesses;

(3) As payers of license and gasoline taxes, their tax funds will be "wasted" due to an alleged compulsory refund of Federal assistance should construction be halted;

(4) As organizations, Drive 35E and the Chamber represent their members' interests in the completion of 35E.

Plaintiffs also argued a number of other issues before the district court, such as rights derived from 23 U.S.C.A., § 103(h), and 23 U.S.C.A., § 103(e)(4). While these statutory and constitutional issues may affect the merits of this case, they do not affect the determination of a justiciable controversy. The bases for plaintiffs' claim to standing are those stated above. In short, they desire 35E to be completed for personal and business reasons, and allege that they have relied upon its completion to their financial detriment.

■ There is no question that taxpayers may sue to enjoin waste or illegal use of public funds. *Almquist v. City of Biwabik*, 224 Minn. 503, 28 N.W.2d 744 (1947). This principle has been specifically held applicable in the road construction context. *Regan v. Babcock*, 188 Minn. 192, 247 N.W. 12 (1933). This case is different, however, in that it involves the nonexpenditure of public funds on a highway. The only claim of waste is (3) above, concerning Federal assistance monies, to be discussed below.

First, plaintiffs assert a justiciable controversy in that they will be denied the benefits of using 35E if chapter 203 is upheld. This alleged interest clearly falls within the language of *Massachusetts v. Mellon, supra*, footnote 1, in that the nonconstruction of 35E will deny its use to people generally. As to this interest, chapter 203 in no way affects the plaintiffs more severely than all other persons traveling in or through the Minneapolis-St. Paul area. While some of the individual plaintiffs herein might personally find the cancellation of a section of 35E a great inconvenience, this does not give rise to a justiciable controversy regarding the validity of chapter 203.

Second, the appellants claim a loss of "millions of dollars" which they allege to have spent in reliance on 35E being completed.[2] The complaint states:

"The aggregate cost of new construction completed, in process or planned since 1960, in the central business area [of

---

1. In *State ex rel. Smith v. Haveland* we quoted: "'* * * The party who invokes the power [of the court] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.' *Massachusetts v. Mellon*, 262 U.S. 447, 448, 43 S.Ct. 597, 601, 67 L.Ed. 1078, 1085." 223 Minn. 89, 94, 25 N.W.2d 474, 478, 174 A.L.R. 544, 548 (1946).

2. It is unclear whether this allegation is being made by the individual or corporate plaintiffs. Since no specific buildings or businesses are mentioned, the latter must be assumed.

St. Paul], approximates $370 million. All such construction was and is in contemplation of an integrated downtown thoroughfare system, coordinated with the Interstate freeway grid."

Even taking this broad allegation to be true, two reasons appear why it does not raise a justiciable controversy. First, it is a matter of common knowledge that such a thoroughfare system in the Twin Cities area has in fact been constructed to the benefit of the plaintiffs and the public generally. Second, it is obvious this system cannot be expanded indefinitely, for environmental reasons among others. It is a legislative matter to determine when, and for what reasons, freeway construction must come to a halt. The fact that such a halt must inevitably disappoint some and please others similarly does not give rise to a justiciable controversy. See, *Almquist v. Town of Marshan*, Minn., 245 N.W.2d 819 (1976). Even an organization with as wide a membership as the Chamber cannot generate standing for itself by so vague an assertion of loss.

Third, the individual plaintiffs contend that their license and gasoline taxes will be wasted by reason of chapter 203. The "waste" would allegedly take place due to a refund of Federal grant monies for the construction of 35E, in the amount of $26 million. The factual setting of this case clearly distinguishes it from other cases where taxpayer funds are directly expended for an allegedly illegal purpose, e. g., *Almquist v. City of Biwabik, supra* ; *Regan v. Babcock, supra.* The refunded money in this case would appear to be Federal money, not derived in the first instance from plaintiffs' license and gasoline taxes on the state level. Plaintiffs certainly cannot show a vested, legal right to these funds or the method of their expenditure. Loss of

Federal assistance simply does not analogize to illegal use or waste of state taxpayers' money, and hence does not provide a basis for a justiciable controversy. It may well be the case that, whether or not 35E is completed, the Federal funds will not be lost.[3]

The fourth interest is described by the corporate plaintiffs in the following terms:

"The foregoing refers to standing and the existence of a justiciable controversy as to the individual plaintiffs. However, there is additional fortification as to the St. Paul Area Chamber of Commerce and Drive 35E, both non-profit corporations. Almost every case concerning injunctions against the completion of interstate highways were commenced either by Chambers of Commerce, such as in *Fayetteville Area Chamber of Commerce, et al, v. Volpe*, 463 F.2d 402 ([4 Cir.] 1972), or by nonprofit environmental groups. See 11 ALR Fed. 556, 569, et seq. In all cases, the courts found standing and a justiciable controversy. The environment was involved, so environmental groups had standing. Drive 35E has as its purpose, and as pleaded, promoting and supporting the completion of a certain portion of the freeway grid in the State of Minnesota. It has a direct interest by reason of its corporate purposes, and accordingly, a justiciable controversy exists. The purposes of the Chamber of Commerce, as alleged in the Complaint, are directly affected by the prohibition on 35E contained in the contested statutes."

This is a bootstrap approach when applied to Drive 35E: A corporation is formed to promote a project, the project is cancelled, hence justiciability. A special interest group cannot by this rationale acquire standing to complain that its special inter-

---

**3.** A 1976 amendment to the Federal Aid Highway Act, Public Law 94–280, 90 Stat. 425, amends 23 U.S.C.A., § 103(e)(4), by adding the following sentence at the end thereof: "In the event a withdrawal of approval is accepted pursuant to this section, the State shall not be required to refund to the Highway Trust Fund any sums previously paid to the State for the withdrawn route or portion of the Interstate System as long as said sums were applied to a transportation project permissible under this title." Although the record is not clear on this point, respondent Marzitelli asserts that the parkway authorized by chapter 203 may qualify under this transfer provision. The federally-provided 35E funds could then be spent on construction of the parkway, and those already expended would not have to be repaid.

est has been eliminated by a legislative act. It must take its case to the legislature, which has the power to afford it the relief it seeks.

The Chamber's case is somewhat different in that the Chamber is a long-standing organization whose members have direct pecuniary interests in the business future of downtown St. Paul. It might well be that the completion of 35E would benefit business in downtown St. Paul, thus the Chamber's concern over its cancellation is understandable. Nevertheless, under the criteria of the cases discussed above, the Chamber must be able to show some concrete, legally cognizable interest which is directly threatened by chapter 203.

Concisely stated, the Chamber's interest in this case stems from its general concern for the welfare of the St. Paul business community. Such a broad interest, if held to be sufficient for justiciability, would give the Chamber or similar groups a right to challenge virtually every legislative enactment affecting business in St. Paul. Even under a loose interpretation of the justiciability requirement, such a result is clearly not contemplated by our prior decisions in this area. Particularly where a statute is challenged as unconstitutional, the threatened interest must be of sufficient specificity to permit legal definition and judicial protection. Here, the interest alleged by the Chamber does not satisfy this minimal specificity, and hence does not establish a justiciable controversy.

We therefore find that the plaintiffs have failed to establish a justiciable controversy, and accordingly a declaratory judgment on the merits may not be rendered. The district court is affirmed in so far as it found no justiciable controversy; its judgment on the merits of the action is vacated.

Affirmed in part; vacated in part.

OTIS, J., took no part in the consideration or decision of this case.