Margaret H. THUMA, Respondent,

v.

Jon S. KROSCHEL, individually and in his capacity as elected official of the City of Afton, Appellant,

Suzanne Flinsch, et al., individually and in their respective capacities as elected officials of the City of Afton, Appellants.

No. C6–92–2535.

Court of Appeals of Minnesota.

Sept. 7, 1993.

Review Denied Dec. 14, 1993.

James J. Hanton, John F. Bannigan, Jr., Bannigan & Kelly, P.A., St. Paul, for respondent Margaret H. Thuma.

Jon Erik Kingstad, Lakeland, for appellant Jon S. Kroschel.

Judson D. Jones, Minneapolis, for appellants Suzanne Flinsch, et al.

Considered and decided by HARTEN, P.J., and HUSPENI and DAVIES, JJ.

## OPINION

HUSPENI, Judge.

Appellants contend the trial court erred in concluding they violated the Minnesota Open Meeting Law, Minn.Stat. § 471.705, subd. 1 (1990) and in imposing a $100 civil penalty on each of them pursuant to. Minn.Stat. § 471.-705, subd. 2 (1990). Appellants also claim the trial court erred in denying their interlocutory motion for dismissal and summary judgment and seek sanctions pursuant to Minn.R.Civ.P. 11 and Minn.Stat. § 549.21, subd. 2 (1990). We affirm in part and reverse in part.

## FACTS

Respondent Margaret H. Thuma, a resident of Afton, Minnesota, commenced this suit against appellants Jon S. Kroschel, mayor of the City of Afton, and Afton City Council members Suzanne Flinsch and Nicholas Mucciacciaro, for actions taken by them in connection with a well-drilling contract entered into on behalf of the city by Kroschel on June 11, 1991, to rectify contamination of a well in an Afton city park.[1]

On June 11, 1991, the Afton Planning Commission conducted a regularly scheduled meeting in the Afton City Hall Council Chambers, during which respondent alleges appellants violated the Minnesota Open Meeting Law. Barbara Kallusky, Afton's zoning administrator, noted in her personal minutes of the meeting that appellants left the council chambers, went to the anteroom, a coffee area between the chambers and the city clerk's office, and returned eight minutes later. Respondent also testified she observed appellants leave the planning commission meeting.

Helen Baker, who attended the meeting to report on another matter, testified she left the meeting to make a telephone call and observed appellants "speaking together" in the anteroom. She further stated appellants "were together and they were looking at a document which was on the counter and grouped around it." Baker testified she rec-

---

1. In May 1991, the Minnesota Department of Health notified Suzanne Flinsch, the council member responsible for maintaining city property, that the well in Afton Square Park failed to meet safety requirements.

ognized the document, although she did not specifically testify as to what she recognized. Later, however, she testified further that she again saw the document appellants were discussing in the anteroom when Kroschel addressed the planning commission to explain that he already had a signed contract to resolve the well problem. Kroschel stated:

*I think what we've decided to do, ah, not we, I decided to do* and am taking it upon myself to say, that the well is of primary importance to the park and it is something that is necessary to the maintenance of the park and I'm calling this an emergency measure *Bob [Beltrame, committee chairperson] has the signed contract already,* so no matter what decision you come up [with] tonight, we're going to do it.

(Emphasis added.)

Appellants presented an entirely different account of the June 11, 1991, meeting. Beltrame testified that on June 10, 1991, he instructed a city employee to obtain a quotation for drilling another well in the city park. He obtained a quotation the following day, noting the urgency of the project given the approaching annual July 4 holiday and parade in the park. Beltrame, who expected to see Kroschel at the meeting, testified he decided to bring the well contract up at the planning commission meeting on June 11, 1991. Beltrame stated he saw Kroschel discussing a matter with Flinsch and that Kroschel told him later, before the commission discussed the well, that he had already signed the contract.

Kroschel testified that although he did talk with Flinsch at the June 11, 1991, meeting and that she was present when he and Beltrame discussed the well issue, he and Flinsch did not discuss the well contract. Flinsch stated she overheard Kroschel discuss the well contamination with Beltrame and she told Kroschel that his authorization of repair was consistent with procedures for other minor repairs. Flinsch testified she left the chambers at 7:45 p.m. to call the same individual Baker telephoned. That individual testified that he received a telephone call from Flinsch at that time.

Kroschel also stated he asked Mucciacciaro for suggestions on how to deal with the con-

taminated well. Mucciacciaro testified he advised Kroschel that, as mayor, he had emergency authority to solve the well issue before the impending July 4 celebration. Kroschel signed the well contract. After informing Flinsch that he had signed the contract, Kroschel delivered it to Beltrame during the planning commission meeting. Kroschel testified that he executed the contract because he had emergency authority to provide clean water for the city park.

All appellants denied that they met to discuss the well contract during the planning commission meeting. They allege a meeting among them could not have occurred during the time respondent alleges because the tape recording of the meeting indicates Kroschel made statements during that time. The city council thereafter met on June 18, 1991, and passed a resolution approving the well-drilling contract entered into by Kroschel on June 11, 1991.

In early 1992, respondent commenced a declaratory judgment action alleging that (1) on June 11, 1991, appellants violated the Minnesota Open Meeting Law, Minn.Stat. § 471.705, subd. 1 (1990); (2) the mayor, in approving the emergency well-drilling contract, acted ultra vires; and (3) appellants violated the uniform municipal contracting law, Minn.Stat. § 471.345, subd. 5 (1990), in failing to obtain two quotations for the emergency well-drilling contract. The trial court denied appellants' motion to dismiss the complaint and to strike the pleading under Minn. R.Civ.P. 12 or, in the alternative, to dismiss the third count and to grant summary judgment on the first two counts.

Following a bench trial, the trial court concluded respondent had standing to bring the suit, appellants had violated the open meeting law on June 11, 1991, respondent did not meet her burden of proving a violation of the open meeting law on June 18, 1991, when the city council ratified the mayor's emergency action, the Minnesota Civil Defense Act of 1951 did not apply to the case, and therefore Kroschel acted ultra vires in executing the well-drilling contract without authority from the city council, and that appellants did not violate the uniform municipal contracting law

in failing to obtain a second quotation to repair the well on an emergency basis. The trial court imposed a $100 civil penalty on each appellant for the open meeting violation, and thereafter denied appellants' motion for amended findings and conclusions or, in the alternative, a new trial.

## ISSUES

1. Does evidence in the record as a whole support the trial court's findings of fact and conclusion that appellants on June 11, 1991, violated the Minnesota Open Meeting Law, Minn.Stat. § 471.705, subd. 1 (1990)?

2. Did the trial court err (a) in denying summary judgment on the count alleging open meeting law violations and the count alleging the mayor acted ultra vires; and (b) in denying appellants' motion to dismiss the count claiming appellants violated Minn.Stat. § 471.345, subd. 5 (1990)?

3. Are sanctions against appellants required under Minn.R.Civ.P. 11 and Minn. Stat. § 549.21, subd. 2 (1990), where there was no showing of bad faith and respondent's claim survived summary judgment?

## ANALYSIS

### I.

Review of a case tried by the court without a jury is limited to determining whether the trial court's findings are clearly erroneous and whether it erred in its conclusions of law. Minn.R.Civ.P. 52.01; *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn. 1990).[2] A trial court's findings of fact are clearly erroneous when they are not "reasonably supported by evidence in the record considered as a whole." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 441 (Minn. 1983). Due deference must be given to the trial court's opportunity to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01; *Snesrud v. Instant Web, Inc.*, 484 N.W.2d

423, 428 (Minn.App.1992), *pet. for rev. denied* (Minn. June 17, 1992). An appellate court will reverse a trial court's findings only if it is left with a definite and firm conviction that a mistake has been made. *Snesrud,* 484 N.W.2d at 428.

Open meeting statutes must be construed most favorably to the public. *St. Cloud Newspapers, Inc. v. District 742 Community Schs.*, 332 N.W.2d 1, 4 (Minn.1983). The Minnesota Open Meeting Law provides:

Except as otherwise expressly provided by statute, all meetings, including executive sessions, of any state agency, board, commission, or department when required or permitted by law to transact public business in a meeting * * * shall be open to the public.

Minn.Stat. § 471.705, subd. 1 (1990). The Minnesota Open Meeting Law prohibits actions being taken at a secret meeting where it is impossible for the interested public to become fully informed regarding the governing body's decision, assures the public's right to be informed, and affords the public an opportunity to present its views to the governing body. *St. Cloud Newspapers,* 332 N.W.2d at 4.

Although the statute itself does not define "meeting," the supreme court has held that meetings subject to the Minnesota Open Meeting Law are

those gatherings of a *quorum* or more members of the governing body, or a quorum of a committee, subcommittee, board, department, or commission thereof, *at which members discuss, decide, or receive information as a group on issues relating to the official business of that governing body.* Although "chance or social gatherings" are exempt from the requirements of the statute, a quorum may not, as a group, discuss or receive information on official

2. Appellants incorrectly state the standard of review for this case. They assert that we must determine, in reviewing the trial court's findings, whether the findings have "substantial evidentiary support." The substantial evidence standard applies to our review of an administrative agency's findings of fact under Minn.Stat. § 14.69 (1992). *See Taylor v. Beltrami Elec. Coop. Inc.,*

319 N.W.2d 52, 56 (Minn.1982) (an agency decision will be reversed if "unsupported by substantial evidence in view of the entire record as submitted"); *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977) (defining "substantial evidence"). This standard, therefore, does not apply in this case.

business in any setting under the guise of a private social gathering.

*Moberg v. Independent Sch. Dist. No. 281,* 336 N.W.2d 510, 518 (Minn.1983) (citation omitted) (emphasis added). Since *Moberg*, Minnesota courts have reiterated that public bodies are on notice that good faith or a lack of harm to the public are not defenses to an action by a member of the public for a violation of the Minnesota Open Meeting Law. *Merz v. Leitch,* 342 N.W.2d 141, 146 (Minn. 1984); *Willison v. Pine Point Experimental Sch.,* 464 N.W.2d 742, 744 (Minn.App.1991).

■ In considering all the evidence, the trial court concluded appellants "met and conducted a meeting within the scope of Minn.Stat. § 471.705 in the room between the council chambers and the administrative offices of the city." It stated that although the evidence did not show appellants attended the planning commission meeting with the intent of conducting a closed meeting, "circumstances developed at the meeting of the Afton City Planning Commission which resulted in a violation." We must decide, therefore, whether the evidence on the record supports the conclusion that a quorum of the Afton City Council, in a closed meeting, discussed, decided, or received information as a group on issues relating to the official business of that governing body. *See Moberg,* 336 N.W.2d at 518.

■ Here, appellants unquestionably constitute a quorum of the Afton City Council. The quorum requirement emphasizes "the importance of the power of the governing body to actually transact business." *Minnesota Daily v. University of Minn.,* 432 N.W.2d 189, 193 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 25, 1989). The evidence on the record additionally supports the trial court's findings that appellants gathered in the anteroom and discussed the well contract as a group. Although the trial court did not specifically state it found appellants' testimony not credible, its findings based upon respondent's evidence imply as much. The decision to disbelieve appellants' testimony was within the discretion of the trial court. *See Snesrud,* 484 N.W.2d at 428.

Appellants contend respondent did not present evidence of what appellants discussed. Requiring the presentation of such direct evidence, however, would place an intolerable burden on a plaintiff alleging an open meeting law violation where typically such discussions take place in secret. *See St. Cloud Newspapers,* 332 N.W.2d at 4. Respondent presented evidence that appellants left the planning commission meeting for eight minutes, during which time they were seen standing and talking at an anteroom counter on which the well-drilling contract was placed. The trial court reasonably inferred that appellants discussed the well contract together. The inference is supported by Kroschel's later statement when he presented the signed contract to the planning commission: "I think what we've decided to do, ah, not we, I decided to do." We are not left with a definite and firm conviction that the trial court erroneously found that appellants gathered and discussed the well contract on June 11, 1991. *See id.*

## II.

■ An appellate court may review otherwise nonappealable interlocutory orders, such as an order denying summary judgment, on an appeal from a judgment. *Schoer v. West Bend Mut. Ins. Co.,* 473 N.W.2d 73, 75 (Minn.App.1991). However, such orders must involve the merits or affect the judgment. *Id.* (citing Minn.R.Civ.App.P. 103.04). On appeal from a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988); *see* Minn.R.Civ.P. 56.03.

Appellants contend the trial court erred (a) in denying their motions for summary judgment on counts I (violations of the open meeting law) and II (ultra vires); and (b) in refusing to dismiss count III (violations of Minn.Stat. § 471.345, subd. 5). We agree in part.

## A.

Count I of respondent's complaint alleged three separate violations of the open meeting law: (1) appellants held a "meeting" on June

11, 1991, at which they discussed the emergency well-drilling contract; (2) appellants conspired to cover the violation of the open meeting law by ratifying the approval of the contract on June 18, 1991; and (3) appellants violated Minn.Stat. § 471.705, subd. 1b (1990) in failing to have made available a copy of the resolution. The trial court ultimately concluded that respondent failed to meet her burden of proving (2) and (3). Therefore, the only aspect of the denial of appellants' summary judgment motion involving the merits or affecting the judgment pertains to the June 11, 1991, violation of the Minnesota Open Meeting Law.

■ Appellants have cited no authority that permits appellate review of a denial of summary judgment where the party seeking review failed to prevail on the merits at trial and failed to gain reversal on appeal. Nonetheless, we conclude the affidavits submitted by the parties created a material factual dispute as to whether appellants held a meeting on June 11, 1991, in violation of Minn. Stat. § 471.705, subd. 1. *See Offerdahl*, 426 N.W.2d at 427. The trial court's denial of summary judgment was proper on this issue.

Count II of respondent's complaint stated that Kroschel acted ultra vires in entering into the well-drilling contract in violation of Minn.Stat. § 412.201 (1990).[3] Appellants claimed that Kroschel had emergency authority pursuant to Minn.Stat. § 12.29, subd. 1 (1990) and moved for summary judgment on this issue. In denying summary judgment, the trial court concluded there was a fact issue as to whether the contaminated well was an "unforeseen combination of circumstances which calls for immediate action to prevent a disaster." *See* Minn.Stat. § 12.-03, subd. 3 (1990). Ultimately the court concluded after trial that the Minnesota Civil Defense Act of 1951, Minn.Stat. § 12.01–.46 (1990) did not apply, and because Kroschel "had no * * * authority under Minnesota law to act without prior authority of the Afton City Council," he acted ultra vires.

■ Challenging the trial court's determination that Kroschel acted ultra vires, appellants argue that respondent failed to present a justiciable controversy as required by the Uniform Declaratory Judgment Act. *See* Minn.Stat. § 555.01–.16 (1990).

■ Under Minnesota law, a justiciable controversy must exist before the courts have jurisdiction to render a declaratory judgment. *St. Paul Area Chamber of Commerce v. Marzitelli*, 258 N.W.2d 585, 587 (Minn.1977). A justiciable controversy

> involves definite and concrete assertions of right and the contest thereof touching the legal relations of parties having adverse interests in the matter with respect to which the declaration is sought, and must admit of specific relief by a decree or judgment of a specific character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Seiz v. Citizens Pure Ice Co.*, 207 Minn. 277, 281, 290 N.W. 802, 804 (1940), *quoted in Marzitelli*, 258 N.W.2d at 587. The justiciable controversy requirement also requires that the plaintiff

> prove his possession of a legal interest or right which is capable of and in need of protection from the claims, demands, or objections emanating from a source competent legally to place such legal interest or right in jeopardy. Although [plaintiff] need not necessarily possess a cause of action * * * as a basis of obtaining declaratory relief, nevertheless he must, as a minimum requirement, possess a bona fide legal interest which has been, or with respect to the ripening seeds of a controversy is about to be, affected in a prejudicial manner.

*State ex rel. Smith v. Haveland*, 223 Minn. 89, 92, 25 N.W.2d 474, 477 (1946), *quoted in Marzitelli*, 258 N.W.2d at 587–88. The justiciable controversy requirement compels a party seeking a declaratory judgment to request the court to adjudicate present rights on established facts and not to render an advisory opinion or to address a political

---

**3.** Minn.Stat. § 412.201 (1990) provides that "[e]very contract * * * shall be executed on behalf of the city by the mayor * * * with the corporate seal affixed, and only pursuant to the authority from the council."

question. *See Ashcroft v. Mattis,* 431 U.S. 171, 172, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977) (justiciability required for federal declaratory judgment to issue); *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968) (justiciable case or controversy required for federal court jurisdiction).

 A state or local taxpayer has sufficient interest to maintain an action to declare a state or municipality has engaged in illegal expenditure of tax money. *McKee v. Likins,* 261 N.W.2d 566, 571 (Minn.1977). Respondent, however, did not seek to void the well-drilling contract or to restrain the unlawful use of city money.[4] It is well-settled that a plaintiff in a declaratory judgment action involving a municipality may request a determination of the rights and liabilities under a contract or note. *See* Kenneth Elkins, et al., *McQuillin, The Law of Municipal Corporations* § 49.83 n. 17 (3d ed. 1993). The relief respondent requested was solely limited to a judicial declaration that Kroschel acted ultra vires. Respondent has not alleged that she was "prejudiced by the wrongful diversion of public funds." *See Almquist v. City of Biwabik,* 224 Minn. 503, 505, 28 N.W.2d 744, 745 (1947) (illegal diversion of funds presents a justiciable controversy under the Uniform Declaratory Judgment Act). Absent "the existence of a genuine conflict in the tangible interests of the opposing litigants," *Haveland,* 223 Minn. at 89, 25 N.W.2d at 477, the trial court did not have jurisdiction to consider the merits of count II.

## B.

In count III, respondent alleged appellants violated Minn.Stat. § 471.345, subd. 5 (1990) (the uniform municipal contracting law), in failing to obtain two quotations for the well-drilling contract. The court's conclusion after trial that the well emergency made it

impracticable to receive multiple quotations, and that appellants did not violate the uniform municipal contracting law, resulted in appellants prevailing on count III. Therefore, we need not determine whether the trial court erred in refusing to dismiss this count. *See Schoer,* 473 N.W.2d at 75.

## III.

 Sanctions on appeal under Minn. R.Civ.P. 11 and Minn.Stat. § 549.21, subd. 2 (1990) are not mandated or appropriate simply because we affirm the trial court's conclusion that appellants violated the open meeting law. Rule 11 provides that a party or attorney sign pleadings and motion papers acknowledging that it is well-grounded in fact, that it is warranted by existing law, and that it is not interposed for any improper purpose. Minn.R.Civ.P. 11. "If a pleading, motion, or other paper is signed in violation of [Rule 11], the court * * * shall impose * * * an appropriate sanction," including reasonable attorney fees. *Id.* Under the statute, the court in its discretion may award costs and reasonable attorney fees against a party who has "acted in bad faith [or has] asserted a claim or defense that is frivolous." Minn.Stat. § 549.21, subd. 2.

A party who survives a motion for summary judgment "with the major claims intact should not be subject to sanctions after trial predicated on these surviving claims." *Uselman v. Uselman,* 464 N.W.2d 130, 144 (Minn. 1990). Respondent, who survived a motion to dismiss and summary judgment, had no reason to believe that the court deemed the claim frivolous or meritless. *See id.* at 144–45. Therefore, even if this court reversed the trial court's determination that appellants violated the open meeting law, sanctions would remain inappropriate under *Uselman.*

---

4. In *Arens v. Village of Rogers,* 240 Minn. 386, 390, 61 N.W.2d 508, 513 (1953), the court discussed the principle that the unlawful expenditure of municipal funds raised through taxes gives rise to a justiciable controversy that may be considered in a declaratory judgment action. To illustrate, the court cited *Regan v. Babcock,* 188 Minn. 192, 201, 247 N.W. 12, 13 (1933). *Arens,* 240 Minn. at 392, 61 N.W.2d at 513. In *Regan,*

the court determined that a taxpayer had a substantial interest in funds raised through auto license fees and state gasoline taxes to permit a declaratory judgment action to have paving and grading contracts voided. *Regan,* 188 Minn. at 201, 247 N.W. at 13. Unlike respondent in this case, the plaintiff in *Regan* specifically sought to have the court declare the contracts void and to enjoin expenditure of the funds.

## DECISION

The trial court properly determined appellants violated the Minnesota Open Meeting Law. However, respondent did not present a justiciable controversy regarding whether the mayor acted ultra vires in executing a contract, and the trial court erred in reaching the merits on that issue.

**Affirmed in part and reversed in part.**