**Jon S. KROSCHEL, et al., Nicholas Mucciacciaro, Appellants,**

v.

**The CITY OF AFTON, The League of Minnesota Cities Insurance Trust, Respondents.**

No. C3–93–1661.

Court of Appeals of Minnesota.

March 8, 1994.

Review Granted (1 pet.), Review Denied (1 pet.), April 28, 1994.

Suzanne Flinsch, Afton, for Jon S. Kroschel, et al.

Jon Erik Kingstad, Lakeland, for Nicholas Mucciacciaro.

Pierre N. Regnier, Marsha Eldot Devine, Jardine, Logan & O'Brien, St. Paul, for The City of Afton.

Richard B. Allyn, M. Gregory Simpson, Robins, Kaplan, Miller & Ciresi, Minneapolis, for the League of Minnesota Cities Ins. Trust.

Considered and decided by DAVIES, P.J., and KALITOWSKI and FLEMING,* JJ.

## OPINION

DAVIES, Judge.

Appellants commenced this action seeking a declaratory judgment that respondents have either the duty or the authority to defend, or to reimburse them for costs and attorney fees incurred to defend, an action alleging that appellants violated the open meeting law. The trial court granted summary judgment for respondents. The trial court also granted $500 in attorney fees for each respondent. We affirm the grant of attorney fees, but otherwise reverse and remand.

## FACTS

Appellants were defendants in an action brought by an Afton resident against the mayor of Afton and two city council members in both their personal and official capacities. *Thuma v. Kroschel,* 506 N.W.2d 14, 16 (Minn. App.1993), *pet. for rev. denied* (Minn. Dec. 14, 1993) (the *Thuma* action). This action is a derivative of that action.

At all relevant times, appellant Jon S. Kroschel was the mayor of the City of Afton, and appellants Suzanne Flinsch and Nicholas Mucciacciaro were members of the Afton City Council. Count I of the *Thuma* complaint alleged that by holding a closed meeting during which they deliberated and approved a contract for the repair of the well in Afton Square Town Park, appellants violated the Minnesota Open Meeting Law, Minn. Stat. § 471.705, subd. 1 (1990). Count II alleged that the mayor's action in approving the contract under "emergency powers" was ultra vires because the mayor has no "emergency powers." Count III alleged that failure to obtain two quotations for the emergency well-drilling contract violated the Uniform Municipal Contracting Law, Minn.Stat. § 471.345, subd. 5 (1990).

The *Thuma* complaint sought a "civil penalty" against each individual defendant in the amount of $100 for each separate violation of the open meeting law. It also sought to have appellants removed from office because of multiple violations of the open meeting law. It did not seek compensatory damages or punitive damages and the city was not a party to the suit.

The trial court found that each appellant violated the open meeting law on one occasion; that Mayor Kroschel acted ultra vires in executing the contract without authority of

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the city council; but that appellants had not violated the Uniform Municipal Contracting Act. For the open meeting violation, the trial court imposed a $100 "civil penalty" on each appellant pursuant to Minn.Stat. § 471.705, subd 2. (1990).

On appeal, this court affirmed the ruling that appellants violated the open meeting law. *Thuma v. Kroschel* 506 N.W.2d 14, 19 (Minn.App.1993), *pet. for rev. denied* (Minn. Dec. 14, 1993). This court concluded, however, that the trial court did not have jurisdiction to decide the ultra vires issue on the merits. *Id.* at 21.

While the *Thuma* action was pending, appellants commenced this declaratory judgment action against the city and the League of Minnesota Cities Insurance Trust (LMCIT). Appellants assert that respondent city was obligated to provide them a defense in the *Thuma* action pursuant to either Minn.Stat. § 466.07 (1990) (indemnification for municipal employee liability) or Minn.Stat. § 465.76 (1990) (reimbursement to municipal employee for costs and attorney fees incurred in the defense of charges of a "criminal nature"). Appellants also assert that respondent LMCIT, a self-insuring pool operated for the benefit of Minnesota municipalities, owes them a defense and reimbursement under the covenant issued to the city by LMCIT.

Counsel for the city and LMCIT appeared at a first summary judgment motion hearing, but the hearing was cancelled when appellants advised them that a stipulation for dismissal would be filed because the city council had voted to reimburse appellants. Within days, the council decision to reimburse appellants was rescinded, and the summary judgment motion hearing was again noticed. At the rescheduled hearing, the city and LMCIT sought attorney fees because their counsel had to appear twice to argue the same summary judgment motion. The trial court granted attorney fees in the sum of $500 for each respondent.

At the hearing, the district court also granted summary judgment in favor of the city and LMCIT, dismissing with prejudice appellants' petition for declaratory relief.

We affirm the award of attorney fees to respondents, but reverse the dismissal, and remand.

## ISSUES

1. Does the city have a duty under Minn. Stat. § 466.07 (1990) to defend the *Thuma* action, or to reimburse for costs and attorneys fees incurred by appellants to defend the action?

2. May the city under Minn.Stat. § 465.76 (1990) reimburse appellants for costs and attorney fees incurred to defend the *Thuma* action?

3. Is LMCIT obligated to provide coverage on behalf of the city pursuant to the terms of the covenant it issued to the city?

4. Did the trial court abuse its discretion by awarding attorney fees to each respondent in the amount of $500?

## ANALYSIS

■ On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (1988). The parties agree that there are no material facts in dispute and that resolution of this case depends upon the legal determination of how statutes are applied to undisputed facts. This court owes no deference to the trial court's resolution of a legal issue. *Queen v. Minneapolis Pub. Schs.,* 481 N.W.2d 66, 67 (Minn.App.1992).

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (1990); *accord Tuma v. Commissioner of Economic Sec.,* 386 N.W.2d 702, 706 (Minn.1986). When interpreting a statute, the court must

examine the language of the statute and, "[a]bsent a clearly expressed legislative intention to the contrary, that legislative intention must ordinarily be regarded as conclusive."

*Swenson v. Emerson Elec. Co.,* 374 N.W.2d 690, 699 (Minn.1985) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*

447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)), *cert. denied,* 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986).

## I.

■ The open meeting law requires that meetings of the governing body of any city shall generally be open to the public. Minn. Stat. § 471.705, subd. 1 (1990). Any person who violates the open meeting law "*shall* be subject to personal liability in the form of a civil penalty in an amount not to exceed $100 for a single occurrence." Minn.Stat. § 471.-705, subd. 2 (1990) (emphasis added).

This court has already held that appellants violated the open meeting law. *Thuma,* 506 N.W.2d at 19. We also affirmed that the violation was unintentional. *Id.*

The Municipal Tort Liability Act provides:

**Indemnification required.** [Subject to the statutory maximums contained in section 466.04], a municipality or an instrumentality of a municipality shall defend and indemnify any of its officers and employees, whether elective or appointive, *for damages, including punitive damages,* claimed or levied against the officer or employee, provided that the officer or employee:

(1) was acting in the performance of the duties of the position; and

(2) was not guilty of malfeasance in office, willful neglect of duty, or bad faith.

Minn.Stat. § 466.07, subd. 1 (1990) (emphasis added).

The trial court concluded that the duty of a municipality to defend and indemnify[1] its employees under section 466.07 does not extend to the *Thuma* action because that action, alleging violations of the open meeting law, was not a claim for "damages" or "punitive damages." The plaintiff in the *Thuma* action sought imposition of a "civil penalty" under Minn.Stat. § 471.705, subd. 2 (1990). The trial court concluded that the "civil penalty" was not analogous to "damages," as referred to in section 466.07, and the duty of the city to defend its employees under sec-

tion 466.07 did not extend to the *Thuma* action. We agree.

Prior to 1987, a municipality had a duty to defend and indemnify its employees against any "tort claim or demand." Minn.Stat. § 466.07 (1986). Section 466.07 was amended in 1987, however, to remove the word "tort" from that phrase. 1987 Minn.Laws ch. 79, § 2. As amended, section 466.07 provides that a municipality must defend and indemnify its employees against any claim for "damages, including punitive damages." Minn.Stat. § 466.07 (1990).

Appellants argue that removal of the word "tort" by the 1987 amendment was intended to broaden a municipality's duty to defend and indemnify its employees. That may be true, but we are not persuaded that the duty was extended to reach this kind of case. The attorney general has specifically rejected that contention:

Indeed, while the 1987 amendment deletes the reference to "tort," it specifically incorporates the notion that the defense and indemnification requirements are directed to actions for "damages."

As noted in [Op.Atty.Gen. 471–a (April 29, 1983)], an action to impose sanctions under the Open Meeting Law is wholly unrelated to the establishment of monetary damages. * * * *Thus, it continues to be our view that Minn.Stat. § 466.07 does not expressly provide authority for defense and indemnification of officers charged personally with Open Meeting Law violations.*

Op.Att'y Gen. 471–a (Dec. 31, 1992) (emphasis added).

One of the legislature's reasons for requiring indemnification of municipal employees for damage claims was to reduce the risk that employees would be burdened with damage awards. *Hearing on S.F. No. 53 Before the Senate Judiciary Committee* (Feb. 2, 1987). We do not believe the $100 civil penalty under the open meeting law is the type of personal expense the legislature was con-

---

**1.** The claim here is for reimbursement of the costs of defense, not for indemnification of the $100 civil penalty.

cerned about when it enacted the indemnification law, or the 1987 amendment to it.

Appellants also attempt to characterize the civil penalty in the open meeting law as punitive damages. As such, appellants argue, the city must defend them under section 466.07. We conclude, however, for several reasons, that civil penalties do not constitute punitive damages. First, punitive damages are allowed only where the harm complained of is the result of "deliberate disregard for the rights or safety of others." Minn.Stat. § 549.20, subd. 1(a) (1990). But a civil penalty is called for under the open meeting law even when, as here, the violation was unintentional. *Thuma,* 506 N.W.2d at 19. Second, punitive damages are awarded to a plaintiff; a civil penalty is awarded to the government (in this case, the city).

Appellants also argue that there is no rational public policy basis to maintain that a violation of the open meeting law is not entitled to defense by the municipality, while at the same time requiring a municipality to defend a public official or employee accused of unlawful discrimination, violations of civil rights, sexual harassment, or police brutality. We conclude, however, that the wrongs referred to by appellants are directed against individuals (or groups of individuals) who, as victims, are allowed to seek compensatory and/or punitive damages for themselves, whereas an open meeting violation is more properly viewed as a wrong directed at society as a whole. Thuma, as an individual plaintiff, could not seek damages as compensation for herself for an open meeting violation. *Cf. Grossman v. School Bd. of Indep. Sch. Dist. No. 640,* 389 N.W.2d 532, 536 (Minn.App.1986) (Complaint alleging open meeting violations must seek "civil penalty" not to exceed $100 to be paid to plaintiff himself, rather than "damages" of $100.). The whole purpose is deterrence.

We hold that the city has no duty under section 466.07 to defend or reimburse appellants for costs and attorney fees incurred in defense of the *Thuma* action.

## II.

■ Minn.Stat. § 465.76 (1990) provides:

If reimbursement is requested by the officer or employee, the governing body of a home rule charter or statutory city or county *may,* after consultation with its legal counsel, reimburse a city or county officer or employee for any costs and reasonable attorney's fees incurred by the person to defend *charges of a criminal nature* brought against the person that arose out of the reasonable and lawful performance of duties for the city or county.

(Emphasis added.)

The trial court concluded that appellants are not entitled to reimbursement of their attorney fees under Minn.Stat. § 465.76 because (1) allegations of a violation of the open meeting law are not charges of a "criminal nature," and (2) the allegations did not arise out of the lawful performance by appellants of their duties.

We recognize that a violation of the open meeting law is not a criminal act and that the statutory penalty is a "civil penalty." Minn.Stat. § 471.705, subd. 2. We also recognize that the safeguards normally afforded a criminal defendant are not applicable in determining whether a violation has occurred. Nevertheless, we do not believe the legislature required defense of officials in suits for damages under section 466.07 and permitted their defense, under section 465.76, against criminal charges that could result in incarceration, yet intended to bar reimbursement of defense costs in actions seeking a civil fine.

The attorney general has opined that "the authority of cities to reimburse officers for criminal defense may be construed to include as well defense of allegations of violation of the Open Meeting Law." Op.Att'y Gen. 471–a (Dec. 31, 1992). We agree. The attorney general opinion goes on, however, to state a proposition with which we do not fully agree—that in "virtually all cases [it would be required] that [the] officer not be guilty of the violation charged if reimbursement is to be granted." *Id.* That is, if a violation is found to have occurred, according to the attorney general, it cannot then be said that the allegation of violation of the open meeting law "arose out of the reasonable and lawful performance" of public duties. But it

has been established in this case that, although appellants violated the open meeting law, the violation was unintentional. In such a circumstance, we find the conduct to be within the "reasonable and lawful performance of public duties" within the meaning of section 465.76. The violation was simply an unfortunate misstep—a stumble—while the appellants went about the performance of legitimate public services.[2] We conclude that the city may provide reimbursement pursuant to section 465.76.

Because the city council members who are disinterested in reimbursement is less than a quorum, the council must present any reimbursement decision to a district court for approval.[3] (That may be unnecessary, however, in light of our decision on LMCIT liability that follows in part III.) We remand to the district court.

### III.

■ Under the covenant issued to the city by LMCIT, LMCIT has a duty to defend and indemnify city officials in suits arising from their errors and omissions in performing city duties, except that

> LMCIT's duty to pay on behalf of or to indemnify a "covered party" other than the "city" shall *not apply* to any act, error or omission:
>
> \*    \*    \*    \*    \*    \*
>
> d. *For which the "city" is not authorized to indemnify any person by statute.*

(Emphasis added.) [4]

The coverage afforded by the covenant thus parallels the city's statutory duty and

authority to defend and to reimburse; and, because the city may (under our holding in part II) reimburse appellants' defense costs pursuant to section 465.76, we conclude that LMCIT has a concomitant duty under the covenant to reimburse appellants for the costs and attorney fees they incurred in defense of the *Thuma* action (in the absence of malfeasance, etc.).

We note, however, that LMCIT does not have a duty to indemnify for the $100 penalties imposed against each appellant because the policy specifically excludes coverage for "fines or penalties imposed by law." Furthermore, in addition to the exclusion in the covenant, the open meeting law explicitly calls for "personal liability" for the $100 civil penalty. Minn.Stat. § 471.705, subd. 2.

### IV.

■ The trial court granted attorney fees in the amount of $500 for each respondent. The district court has broad discretion in awarding fees. *Solon v. Solon*, 255 N.W.2d 395, 397 (1977). Appellants do not dispute that respondents had to appear twice due to appellant's actions. We find no abuse of the trial court's discretion in awarding attorney fees to respondents under these circumstances.

### DECISION

The city does not have a duty to defend and reimburse under Minn.Stat. § 466.07 (1990) for costs and attorney fees incurred by appellants in their defense of the *Thuma* action. The city may, however, under Minn.

2. We do not address, however, the question of whether the statute would allow payment of defense costs if the open meeting violation were willful or intentional.

3. Section 465.76 provides:
[I]f less than a quorum of the governing body is disinterested, * * * such reimbursement shall be approved by a judge of the district court.

4. The provision in its entirety reads:
LMCIT's duty to pay on behalf of or to indemnify a "covered party" other than the "city" shall not apply to any act, error or omission:
a. Which constitutes malfeasance in office; or

b. Which constitutes willful neglect of duty; or
c. Which constitutes bad faith; or
d. For which the "city" is not authorized to indemnify any person by statute; or
e. Which constitutes dishonesty on the part of a "covered party;" or
f. Which constitutes the willful violation of a statute or ordinance by any official, employee, or agent of the "city."
The terms "malfeasance," "willful neglect of duty," and "bad faith" shall be given the same meaning in this covenant as given in the applicable statute with respect to the "city's" duty to defend or indemnify its official, employees or agents.

Stat. § 465.76 (1990), provide reimbursement for attorney fees and other defense costs. Because less than a quorum of the city council is disinterested in this matter, approval of any reimbursement decision must be sought from a district court.

Under the terms of the covenant issued by LMCIT to the city, LMCIT has a duty to defend and, therefore, to reimburse for the cost of defending. Finally, the trial court did not abuse its discretion in awarding attorney fees in the amount of $500 to each respondent.

**Affirmed in part, reversed in part, and remanded.**