In the Matter of Greg GLAZIER,
Relator,

v.

INDEPENDENT SCHOOL DISTRICT NO.
876, Annandale, Commissioner of Department of Children, Families and
Learning, Respondents.

No. C1–96–1480.

Court of Appeals of Minnesota.

Feb. 4, 1997.

Sonja D. Kerr, Kerr Law Office, Inver Grove Heights, for Relator.

Paul C. Ratwik, Carol A. Marchant, Ratwik, Roszak & Maloney, P.A., Minneapolis, for Respondent Independent School District No. 876.

Hubert H. Humphrey III, Attorney General, Bernard E. Johnson, Assistant Attorney General, St. Paul, for Respondent Commissioner of Minnesota Department of Children, Families and Learning.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and HARTEN, JJ.

## OPINION

KALITOWSKI, Judge.

Greg Glazier and his parent, Connie Glazier, challenge the hearing review officer's decisions: (1) concluding Independent School District No. 876 has provided Greg Glazier with a Free Appropriate Public Education; and (2) declining to order that Independent School District No. 876 provide Greg Glazier with a particular method of instruction. The Commissioner of the Minnesota Department of Children, Families and Learning asks to be dismissed as a respondent in this matter.

## FACTS

Greg Glazier (student) receives special education in Independent School District No. 876, Annandale (district), as an "Other Health Impaired" student. The district and student's mother, Connie Glazier (parent), have a history of disagreement over student's

education. In 1995, parent requested a due process hearing concerning the services provided to student by the district.

On April 27, 1995, a hearing officer issued a decision: (1) finding that the district had failed to provide student with a Free Appropriate Public Education (FAPE); (2) directing an individual educational program (IEP) team to meet and develop an IEP immediately; and (3) requiring the IEP to include direct speech and language services, additional psychological counseling, and a transition plan. The decision further provided that the IEP may include extended school year services (ESYS).

In response to the April 27, 1995, decision, the district developed an August 22, 1995, IEP for the 1995–96 school year through three IEP team meetings held in the summer of 1995. During the first meeting, no discussions were made concerning ESYS for 1995. In addition, prior to or at the meeting, parent was not provided with the Assessment Team Summary Report. The conference log of the second meeting indicates that while the April 27, 1995, decision was on appeal, the district continued to provide services to student pursuant to the May 1994 IEP and in observance of the "stay put" provisions of federal and state laws.

The August 22, 1995, IEP provided four goals with objectives and two additional goals for speech and language service. It proposed a transition program with instructional goals and provided special education services as described in the IEP. This IEP was put into effect on the first school day in the fall of 1995.

Because of parent's rejection of the August 22, 1995, IEP, the IEP team met on September 13, 1995, September 20, 1995, and October 2, 1995, to revise the August 22, 1995, IEP. During these meetings, the IEP team discussed the provision of ESYS and decided to administer to student the Woodcock Johnson–Revised (WJ–R) test in October 1995 to determine whether student had experienced regression. The revised IEP dated October 2, 1995, reflected the changes discussed at the meetings. The WJ–R test was administered as scheduled, but district did not give parent prior written notice.

The October 2, 1995, IEP was also rejected by parent. However, in a letter to the district, parent stated, "[p]lease continue services as I have now except Katherine's [the school psychologist] on an interim basis."

On January 16, 1996, parent met with the IEP team to discuss revisions to the October 2, 1995, IEP, and a new IEP dated January 16, 1996, was drafted. This IEP reflected the changes made to the speech goals and the increase in direct service time. In addition, some language changes were made, goals were added, and service of the school psychologist was removed in response to parent's objection.

By letter dated February 14, 1996, parent requested a second due process hearing. Four days later, on February 19, 1996, an IEP meeting was held. A new IEP dated February 19, 1996, was completed. This IEP contained seven program planning goals, including two in the area of communication, four under academic performance, and one emotional, social, and behavior development goal. In addition, the IEP provided for a transition program.

The second due process hearing was held on March 19, 20, 21, and 26, 1996, before the same hearing officer. Despite objection by student, the hearing officer considered the February 19, 1996, IEP in making her determinations. On April 30, 1996, the hearing officer issued her decision, concluding the district failed to provide student with a FAPE. The district petitioned for review of this decision by a hearing review officer.

On June 19, 1996, the hearing review officer issued a decision reversing the hearing officer with regard to whether the district failed to provide a FAPE and affirming the hearing officer's determination that the hearing officer did not have the authority to order a specific reading methodology for student. Student appealed the hearing review officer's decision to this court, seeking reinstatement of the hearing officer's decision with the modification that the hearing officer should have ordered the district to provide student with Orton–Gillingham reading instruction. On appeal, student added the Commissioner of the Minnesota Department of Children, Families and Learning as a respondent.

## ISSUES

1. On appeal, does this court give deference to the decision of the hearing officer?

2. Did the district provide student a Free Appropriate Public Education?

3. Did the hearing review officer err in declining to order that the district provide student a particular method of instruction?

4. Is the Commissioner of the Minnesota Department of Children, Families and Learning an appropriate party in this appeal?

## ANALYSIS

On appeal, an administrative agency decision will be sustained unless it "reflects an error of law, the determinations are arbitrary and capricious, or the findings are unsupported by the evidence." *County of Scott v. Public Employment Relations Bd.*, 461 N.W.2d 503, 504 (Minn.App.1990), *review denied* (Minn. Dec. 20, 1990) (citation omitted).

■ The construction of a statute is a question of law fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). A reviewing court is not bound by an agency's interpretation of a statute. *Arvig Tel. Co. v. Northwestern Bell Tel. Co.*, 270 N.W.2d 111, 114 (Minn.1978). However, an agency interpretation is entitled to some deference when "(1) the statutory language is technical in nature, and (2) the agency's interpretation is one of long standing application." *Id.* Statutory terms "generally should be construed according to their plain and ordinary meaning." *Nadeau v. Austin Mut. Ins. Co.*, 350 N.W.2d 368, 373 (Minn.1984).

### I.

■ Student first argues that this court should give deference to the decision of the hearing officer in this matter. We disagree. This court reviews the decision of a hearing review officer, not a hearing officer. *See* Minn.Stat. § 120.17, subd. 3b(h) (1996) (the decision of a hearing review officer shall be final unless appealed to the court of appeals). Any decision issued by a hearing officer may be appealed to the hearing review officer within 30 calendar days of receipt of that written decision. *Id.*, subd. 3b(g) (1996).

The hearing review officer has the authority to seek additional evidence if necessary and shall issue *"a final independent decision based on an impartial review of the [hearing officer's] decision and the entire record within 30 calendar days after the filing of appeal." Id.* (emphasis added).

This court shall review the decision of a hearing review officer "in accordance with chapter 14." *Id.*, subd. 3b(h). On appeal, an administrative agency's decision will be sustained unless it "reflects an error of law, the determinations are arbitrary and capricious, or the findings are unsupported by the evidence." *County of Scott v. Public Employment Relations Bd.*, 461 N.W.2d 503, 504 (Minn.App.1990), *review denied* (Minn. Dec. 20, 1990) (citation omitted).

Citing *Independent School District No. 283 v. S.D.*, 88 F.3d 556 (8th Cir.1996), student argues the hearing officer is entitled to greater deference than the hearing review officer. In *S.D.*, the district court faced the task of choosing between conflicting findings and conclusions of the hearing officer and the hearing review officer. *Id.* at 561. The district court credited the hearing officer because the hearing officer had the opportunity to observe the demeanor of the witnesses and to render believability determinations. *Id.* The rationale of *S.D.* does not apply here. In this case, the findings of the hearing officer and the hearing review officer are basically in agreement. In addition, the findings at issue are not based on witness credibility. We therefore conclude that on this appeal, we review the decision of the hearing review officer, with no deference given to the decision of the hearing officer.

### II.

Federal and state laws require the district to provide a FAPE for all handicapped children from birth to age 21. 20 U.S.C. § 1400(c) (1996); Minn.Stat. § 120.17, subd. 1 (1996); Minn. Rule 3525.0300 (1995). FAPE means special education and related services that

(A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include

an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(a)(18) (1996).

The United States Supreme Court held a state satisfies the requirement of providing a handicapped child with a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Board of Educ. v. Rowley*, 458 U.S. 176, 203, 102 S.Ct. 3034, 3049, 73 L.Ed.2d 690 (1982). *Rowley* requires courts to engage in a two-step inquiry to determine whether a handicapped child receives a FAPE. First, the court must determine whether the state has complied with the procedures set forth in the Education of the Handicapped Act (Act). *Id.* at 206, 102 S.Ct. at 3051. Second, the court must determine whether the IEP developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits. *Id.* at 207, 102 S.Ct. at 3051.

**1. Did the district comply with the procedures required for a FAPE?**

■ In Minnesota, the district must comply with the procedures set forth in Minn. Stat. § 120.17, subd. 3b (1996). Student asserts the district failed to follow the procedures in several respects. First, student argues the district failed to give notice to his parent before the administration of the WJ–R test in October 1995 in violation of the parent's rights to prior notice. The hearing review officer concluded a school district may, without prior notice to student's parent, administer testing for the purpose of determining whether regression occurred so that ESYS were required. We agree.

Under the statute, parents and guardians are entitled to prior written notice of:

(1) any proposed formal educational assessment or proposed denial of a formal educational assessment of their child;

(2) a proposed placement of their child in, transfer from or to, or denial of placement in a special education program; or

■ the proposed provision, addition, denial or removal of special education services for their child.

*Id.*, subd. 3b(a). The WJ–R test was not administered for any of the above-listed purposes. Rather, the WJ–R is a standard test, administered to determine whether student experienced regression. Therefore, we conclude the hearing review officer correctly determined parent was not entitled to prior written notice.

Second, student argues the February 19, 1996, IEP was procedurally deficient because it was developed without an IEP meeting. The hearing review officer found:

The conference log of the February 19, 1996, IEP team meeting sets forth the changes that were to be made to the IEP. The record supports the conclusion that these changes were the result of a team process.

Because the record supports the hearing review officer's finding, we reject student's argument.

■ Third, student argues the district failed to provide parent with assessment results or conference logs prior to an IEP meeting, which hampered parent's involvement in the IEP process. The hearing review officer concluded the district does not have a duty to offer assessment results or conference logs to a parent prior to an IEP meeting. We agree. Disabled children and their parents or guardians have the right to participate in decisions involving identification, assessment, and educational placement of children with disability. *Id.*, subd. 3a (3) (1996). However, Minn.Stat. § 120.17, subd. 3b, does not require the district to provide parents with assessment results or conference logs prior to an IEP meeting, and student has identified no other authority requiring the district to do so.

■ Fourth, student argues the district failed to consider ESYS in violation of the April 27, 1995, order by the hearing officer. Minnesota law requires a school district to

[p]rovide extended school year services for those pupils when it is determined:

(1) that the pupil will experience "significant regression" in the absence of an educational program;

(2) the time required to relearn the skills lost is excessive; or

(3) the effects of the breaks in programming are such to prevent the student from attaining the state of self-sufficiency that the student would otherwise reasonably be expected to reach.

Minn.R. 3525.2900, subpt. 1(G) (1995). The hearing officer's April 27, 1995, order directs the IEP team to convene at the earliest possible time to prepare an IEP. It further states that the IEP "may include extended school year services." The record indicates the IEP team did not consider ESYS until the September 13, 1995, meeting. At that meeting, the team decided to collect data so they could determine whether student regressed over the summer of 1995. At the October 2, 1995, meeting, the IEP team decided to administer the WJ–R test for the purpose of determining whether student had experienced regression since the initial test in May 1995. Sometime in October 1995, the WJ–R test was administered to student. Because the test result indicated no regression, and therefore no need for ESYS, we conclude the district's failure to consider ESYS earlier did not harm student's educational progress.

In conclusion, we hold the district followed the procedures for a FAPE. We agree with the hearing review officer that any violations in the process of formulating and implementing the IEPs on the part of the district were technical and did not harm student's educational progress and parent's right to notice, participation, or due process. *See* Minn.Stat. § 120.17, subd. 3b(m) (a school district is not liable for harmless technical violations of this subdivision or rules implementing this subdivision if the school district can demonstrate on a case-by-case basis that the violations did not harm the student's educational progress or the parent or guardian's right to notice, participation, or due process).

**2. Was the designed IEP reasonably calculated to enable student to receive educational benefits?**

*Rowley* requires a school district to develop an IEP reasonably calculated to enable a child with disability to receive educational benefits. *Rowley*, 458 U.S. at 206–07, 102 S.Ct. at 3051. An "appropriate" public education does not mean the absolutely best or potential-maximizing education for the individual child. *Id.* at 200, 102 S.Ct. at 3048. In preparing the IEP, the rules require a school district to include the following:

A. * * * a statement of the pupil's present levels of educational performance;

B. a statement of annual goals, including short-term instructional objectives;

C. a statement of the specific special education and related services to be provided to the pupil and the extent that the pupil will be able to participate in regular educational programs;

D. the projected dates for initiation of each service and the anticipated duration of services;

E. alterations of the pupil's school day, when needed, which must be based on student needs and not administrative convenience;

F. a transition plan, as required by subpart 4;

G. conditional intervention procedures to be used;

H. appropriate evaluation procedures and schedules for determining, on at least an annual basis, whether the short-term instructional objectives are being achieved; and

I. the pupil's need for and the specific responsibilities of a paraprofessional shall be described in the pupil's IEP.

Minn.R. 3525.2900, subpt. 3 (1995). Student argues the district failed to provide him with an IEP reasonably calculated to benefit him educationally for several reasons. First, student argues there was no IEP in place in the beginning of the 1995–96 school year. A review of the record indicates otherwise. Three IEP team meetings were held in the summer of 1995 for the purpose of writing an IEP for the 1995–96 school year, and, as found by both the hearing officer and the hearing review officer, an IEP dated August 22, 1995, was written and implemented.

■ Second, student argues an interim IEP was never written. Minnesota Rule 3525.2900, subpt. 1(F), provides:

For a team to determine the appropriateness of the placement or to resolve questions regarding the content of the IEP including instructional goals and objectives, an interim IEP *may* be written for a period of no more than 60 school days. (Emphasis added.) The rule makes it clear that an interim IEP is not mandatory. More importantly, because the district implemented every IEP developed, there was no need for an interim IEP.

Third, student argues a transition plan was not in place when school began in September 1995. The record, however, supports the hearing review officer's finding that the August 22, 1995, IEP included a transition plan.

■ Fourth, student argues the district failed to provide him with psychological counseling since mid-October 1995. The record indicates that because of parent's objection, the IEP team removed the school psychologist from serving student. However, the IEP team added direct counselling service by a social worker in October 1995. We conclude a failure to provide services by a psychologist did not make student's IEP deficient because parent objected to the psychologist who had been providing services and other counseling services were provided.

■ Fifth, student argues the hearing review officer erred in considering the February 19, 1996, IEP because the IEP was written after parent requested the second due process hearing. The hearing review officer found that during the course of the second due process hearing, student requested a local due process hearing to address the February 19, 1996, IEP. Student did not dispute this finding. We conclude the decision to combine the two due process hearings was appropriate because it served to expedite the resolution of the disputes between the district and student and was in the best interest of the student.

■ Sixth, student argues the February 19, 1996, IEP was substantively deficient as found by the hearing officer. We disagree. A review of the IEP indicates the IEP addressed all the elements required by the rules. Contrary to the hearing officer's finding, the IEP provided a date for periodic review, February 29, 1996. The hearing officer found the transition plan contained in the IEP was inadequate because it failed to address student's self-knowledge. A transition plan is designed to help a student with disability to adjust to living in the real world. While self-knowledge may be helpful to accomplish that purpose, we conclude it is not an essential element of a transition plan.

## III.

■ Student argues the hearing review officer erred in declining to order the district to provide him with Orton–Gillingham reading instruction. *Rowley* held courts must "avoid imposing their view of preferable educational methods" on a school district. *Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051. In so holding, the court noted:

The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child.

*Id.* Heeding *Rowley,* the hearing review officer appropriately declined to order the district to provide student with a particular method of instruction.

## IV.

■ The Commissioner of the Minnesota Department of Children, Families and Learning argues the Commissioner is not a proper or necessary party to this appeal. We agree. First, the Commissioner was not involved in the development or implementation of the IEPs for student. Second, nothing in Minn.Stat. § 120.17 indicates the Commissioner should be a party to a lawsuit between a disabled student and a school district. Subdivision 3b(*l*) indicates only the child's school district is a party to any hearings or appeals under the statute. *Id.,* subd. 3b(*l*). Accordingly, we conclude the Commissioner is not a party contemplated by the statute. We therefore dismiss the Commissioner as a party and strike the arguments in the Commissioner's brief relating to the merits of this matter.

## DECISION

The hearing review officer properly determined that Independent School District No. 876 provided Greg Glazier with a Free Appropriate Public Education and properly declined to require the school district to provide Glazier with Orton–Gillingham reading instruction. The Commissioner of the Minnesota Department of Children, Families and Learning is dismissed as a party in this appeal.

**Affirmed, respondent Commissioner dismissed.**