*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A16-0828

In the Matter of:  J.J.E., a minor
through his parent and natural guardian
Sherrie Williams,
Relator,

vs.

Independent School District 279
(Osseo Area Public Schools),
Respondent,

Office of Administrative Hearings,
Respondent.

**Filed January 17, 2017**
**Affirmed**
**Johnson, Judge**

Office of Administrative Hearings
OAH File No. 82-1300-33176

Sherrie Williams, Brooklyn Park, Minnesota (pro se relator)

Laura Tubbs Booth, Roseann T. Schreifels, Booth Law Group LLC, Minnetonka, Minnesota (for respondent Independent School District 279)

Nathan Hartshorn, Assistant Attorney General, St. Paul, Minnesota (for respondent Office of Administrative Hearings)

Considered and decided by Johnson, Presiding Judge; Reyes, Judge; and Tracy M. Smith, Judge.

**JOHNSON**, Judge

The parties to this appeal are in disagreement concerning the educational services that are required to ensure that a high-school student receives a free appropriate public education, as required by the federal Individuals with Disabilities Education Act (IDEA). The student's mother asked an administrative law judge (ALJ) to require the school district to provide one-on-one instruction in the student's home for a part of each week. The school district asked the ALJ to approve a plan by which the student would receive all his instruction in a classroom setting. The ALJ adopted the school district's proposal and rejected the mother's proposal. We affirm.

## FACTS

J.J.E. is a high-school student who has had special-education needs since grade school. He has a tendency to engage in off-task behavior, has difficulty tracking long-term projects and multi-step academic tasks, has difficulty in reading and math, and has a low tolerance for emotional upsets. J.J.E.'s public-school education is administered according to an individualized education program (IEP), as required by the IDEA. *See* 20 U.S.C. § 1414(c)(1), (d)(1)(B) (2012).

J.J.E. attended high school in Columbia Heights during the 2014-2015 school year. At Columbia Heights, J.J.E.'s IEP required the school to provide him one-on-one instruction for five hours per week. The Columbia Heights district provided this one-on-one instruction at his home during school hours. J.J.E. received passing grades.

J.J.E. and his mother, Sherrie Williams, relocated to the Osseo school district, Independent School District 279 (district), during the summer of 2015. The district promptly requested J.J.E.'s pre-existing IEP and other records from Columbia Heights. The district received the Columbia Heights IEP before the 2015-2016 school year began.

On August 25, 2015, the district and Williams held an IEP meeting during which the district proposed to continue to provide one-on-one instruction, consistent with the pre-existing Columbia Heights IEP, for the first six weeks of the school year, and to reevaluate six weeks later whether a different approach would be beneficial for J.J.E. Williams refused to agree to the district's proposal. Williams also refused to agree to the district's subsequent offers of one-on-one instruction on the ground that the district's proposal did not ensure at-home instruction and would interfere with J.J.E.'s participation in the district's football program.

On September 8, 2015, Williams requested a hearing before an ALJ to challenge the district's compliance with J.J.E.'s IEP. The hearing did not occur because Williams and the district reached an agreement at a September 14, 2015 meeting. Ten days later, Williams signed a document (specifically, a prior written notice, also known as a PWN) that effectively adopted the Columbia Heights IEP with a modification for a shortened in-class schedule instead of one-on-one instruction. Williams signed another PWN on November 30, 2015 that added provisions to the IEP that are not relevant to this appeal.

Williams later came to believe that the district was not properly implementing J.J.E.'s IEP. On January 22, 2016, Williams again requested a hearing before an ALJ to address her concerns that J.J.E. was not receiving at-home instruction and that J.J.E. was

3

not receiving sufficient help with his coursework. The district took the position that J.J.E.'s IEP consists of the pre-existing Columbia Heights IEP and the two PWNs, which collectively authorize a shortened school day as an alternative to at-home instruction. The district also proposed an IEP that would call for J.J.E. to receive all his instruction at school on a full-day schedule. The district believed that a full-day schedule was appropriate because J.J.E.'s performance had improved as he spent more time at the school. At a February 2, 2016 resolution session, Williams refused to accept the school district's proposal to implement a full-day program for J.J.E. Williams filed another request for a hearing on her allegation that the district was not properly implementing J.J.E.'s IEP. In response, the district requested that Williams's two hearing requests be consolidated. In addition, the district requested a hearing on its proposed full-day IEP.

The office of administrative hearings, on behalf of the department of education, consolidated the parties' respective hearing requests. An ALJ conducted a hearing on March 2 and 3, 2016. The ALJ heard testimony from J.J.E., Williams, J.J.E.'s previous at-home instructors in Columbia Heights, and several district employees. In a lengthy and detailed order, the ALJ denied Williams's request for at-home placement and compensatory education and granted the district's proposed IEP. Williams appeals. We construe her *pro se* brief to raise three issues.

## DECISION

The federal Individuals with Disabilities Education Act (IDEA) ensures that school districts provide a free appropriate public education (FAPE) to all disabled children. 20 U.S.C. § 1400(d) (2012). A school district must tailor each disabled child's education to

4

meet the child's unique educational needs.  *Id.* § 1400(d)(1)(A).  School districts must do so by developing an individualized education program (IEP) for each disabled child.  *Id.* § 1414(d)(1)(A) (2012).  An IEP sets forth a disabled child's

> present level of performance, annual goals and objectives, specific services to be provided, an explanation of the extent to which []he will not receive education with nondisabled children, a statement of modifications to district-wide assessment procedures needed in order for h[im] to participate in such assessments, transition services needed, the projected dates and duration of proposed services, and objective criteria and evaluation procedures.

*Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 658 (8th Cir. 1999) (citing 20 U.S.C. § 1414(d)).  The IEP is central to the "cooperative process . . . between parents and schools" envisioned by the IDEA.  *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53, 126 S. Ct. 528, 532 (2005) (citing *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 205-06, 102 S. Ct. 3034, 3050 (1982)).

If a dispute arises between a child's parents and a school district as to the implementation of an IEP, the parties are entitled to an impartial hearing at which the burden of proof is on the party seeking relief.  20 U.S.C. § 1415(f)(1)(A) (2012); Minn. Stat. § 125A.091, subds. 12, 14, 16 (2016).  In this case, Williams had the burden of proving that J.J.E.'s IEP was improperly implemented by the district and that J.J.E.'s IEP did not provide him with a FAPE, while the district had the burden of proving that its proposed full-day IEP would provide J.J.E. with a FAPE.

We will affirm an ALJ's decision unless it reflects an error of law or is "unsupported by substantial evidence" or is "arbitrary or capricious."  Minn. Stat. § 14.69 (2016).

5

Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; and (5) evidence considered in its entirety." *AAA Striping Servs. Co. v. Minnesota Dep't of Transp.*, 681 N.W.2d 706, 718 (Minn. App. 2004) (quotation omitted). A decision is arbitrary or capricious if the ALJ

> (a) relied on factors the legislature never intended it to consider, (b) entirely failed to consider an important aspect of the problem, (c) offered an explanation for the decision that runs counter to the evidence, or (d) rendered a decision so implausible that it could not be ascribed to a difference in view or the result of agency expertise.

*Watab Twp. Citizen Alliance et al. v. Benton Cty. Bd. of Comm'rs*, 728 N.W.2d 82, 89 (Minn. App. 2007), *review denied* (Minn. May 15, 2007).

**I.**

Williams first argues that the ALJ erred by rejecting her allegation that the district failed to provide J.J.E. with a FAPE. Specifically, she argues that the district violated her procedural rights in adopting an IEP and failed to properly implement the IEP.[1]

Under the IDEA, "[a]n 'appropriate' public education does not mean the absolutely best or potential-maximizing education for the individual child." *Glazier v. Independent Sch. Dist. No. 876*, 558 N.W.2d 763, 768 (Minn. App. 1997) (citing *Rowley*, 458 U.S. at

---

[1]The ALJ cited a regulation that applies if a student transfers to a new school district within the same state "within the same school year." 34 C.F.R. § 300.323(e) (2015). The regulation does not apply if a student transfers to a new school district between school years. *See Maynard v. District of Columbia*, 701 F. Supp. 2d 116, 123-24 (D.D.C. 2010). On appeal, neither party contends that the regulation does not apply to this case. Thus, for purposes of this opinion, we assume without deciding that the regulation applies.

200, 102 S. Ct. at 3048). A two-step analysis determines whether a school district has provided a FAPE: "First, the court must determine whether the state has complied with the procedures set forth in the [IDEA]." *Id.* (citing *Rowley*, 458 U.S. at 206, 102 S. Ct. at 3051). "Second, the court must determine whether the IEP developed through the [IDEA's] procedures is reasonably calculated to enable the child to receive educational benefits." *Id.* (citing *Rowley*, 458 U.S. at 207, 102 S. Ct. at 3051).

## A.

Williams argues that the ALJ erred by finding that the district followed proper procedures in adopting changes to J.J.E.'s pre-existing IEP, which relieved the district of any obligation to provide at-home educational services.

The IDEA provides disabled students with procedural safeguards. *See* 20 U.S.C. § 1415 (2012). Among these safeguards are the requirements that the district implement a then-current IEP and provide a PWN to parents before initiating a change in a child's IEP. *Id.* § 1415(b)(3), (c)(1), (j). Parents must have an opportunity to meet with district staff in a conciliation conference if there is an objection to a proposed change in a child's IEP. Minn. Stat. § 125A.091, subd. 7 (2016).

At the beginning of the 2015-2016 school year, J.J.E.'s IEP called for five hours of one-on-one services per week but did not provide a location or time of day that the services were to be provided. The ALJ found that, on August 19, 2015, "a reasonable amount of time" before the school year began on September 8, 2015, the district provided Williams with notice of an IEP meeting for the purpose of adopting J.J.E.'s then-current IEP or establishing a new IEP. After a conciliation conference, Williams signed a PWN that

7

called for a shortened school day at the high school without at-home instruction. At the time of the hearing before the ALJ, J.J.E.'s IEP consisted of the Columbia Heights IEP and the revisions contained in the two PWNs. Nothing in those documents requires at-home instruction.

Thus, substantial evidence supports the ALJ's finding that Williams agreed to J.J.E.'s IEP and, thus, that the district followed proper procedures in adopting the IEP.

**B.**

Williams argues that the ALJ erred by finding that the district did not violate the IEP by not providing at-home instruction to J.J.E.

The IDEA ensures that an IEP is reasonably calculated to enable a disabled student to receive educational benefits. *Rowley*, 458 U.S. at 207, 102 S. Ct. at 3051. The IDEA was created "to open the door of public education to handicapped children on appropriate terms [rather] than to guarantee any particular level of education once inside." *Id.* at 192, 102 S. Ct. at 3043. The district is required "[t]o the maximum extent appropriate" to educate disabled children in the least-restrictive environment. *See* 20 U.S.C. § 1412(a)(5)(A) (2012). In other words,

> children with disabilities . . . are educated with children who are not disabled, and . . . removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

*Id.*; *see also* Minn. Stat. § 125A.08(b)(1) (2016); *Independent Sch. Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556, 561 (8th Cir. 1996) (providing that IDEA's "strong preference" to

educate disabled children with non-disabled children students creates presumption in favor of in-school placement). Furthermore, academic progress in the least-restrictive environment is an "important factor in determining educational benefit." *Rowley*, 458 U.S. at 207 n.28, 102 S. Ct. at 2051 n.28. The IDEA does not require "the furnishing of every special service necessary to maximize each handicapped child's potential." *Bradley ex rel. Bradley v. Arkansas Dep't of Educ.*, 443 F.3d 965, 975 (8th Cir. 2006) (quotation omitted).

At the hearing before the ALJ, J.J.E. testified that he was receiving passing grades during his partial-day attendance at the district's high school. He had not been suspended for behavioral reasons. His teachers and special-education staff testified that he had improved his academic stamina and had healthy peer relationships. His past and present educators testified that at-home education is very restrictive and that in-school progress is desirable. This evidence supports the ALJ's finding that J.J.E. received a FAPE.

Thus, the ALJ did not err by finding that J.J.E.'s IEP was developed according to IDEA's procedural safeguards and was reasonably calculated to enable J.J.E. to receive an educational benefit.

## II.

Williams also argues that the ALJ erred by adopting the district's proposed IEP, which calls for J.J.E.'s full-day placement in the high school.

"The ultimate question for a court under the [IDEA] is whether a proposed IEP is adequate and appropriate for a particular child at a given point in time." *Independent Sch. Dist. No. 283 v. S.D. by J.D.*, 948 F. Supp. 860, 878 (D. Minn. 1995), *aff'd*, 88 F.3d 556 (quotation omitted). "[A] student's IEP must be responsive to the student's specific

9

disabilities, whether academic or behavioral." *CJN v. Minneapolis Pub. Schs.*, 323 F.3d 630, 642 (8th Cir. 2003). "The objective . . . is the achievement of effective results— demonstrable improvement in the educational and personal skills identified as special needs—as a consequence of implementing the proposed IEP." *S.D.*, 948 F. Supp. at 885 (quotation omitted).

District employees testified at the hearing that J.J.E. had improved his behavior by using learned techniques and resources and was likely to succeed in high school while attending school for a full day. J.J.E.'s past at-home educators testified that in-school placement, which is a less-restrictive environment than at-home education, generally is preferable to at-home education. All members of the district's staff who had been involved with J.J.E. testified that they believed that J.J.E. would be better off with a full-day IEP for behavioral and social reasons and to maximize his post-secondary options. This evidence supports the ALJ's findings that the district's proposed IEP would benefit J.J.E.'s academic achievement in the least-restrictive environment.

Thus, the ALJ did not err by concluding that the district's proposed IEP is designed to provide J.J.E. with a FAPE.

**III.**

Williams last argues that the Chief ALJ erred by denying her motion to disqualify the assigned ALJ. Williams moved to disqualify the assigned ALJ before the hearing on the ground that she was biased. The Chief ALJ concluded that the assigned ALJ was not biased and denied Williams's motion.

This issue is governed by the following provision in the Minnesota Rules:

> [An ALJ] shall withdraw from participation in a contested case at any time if he or she deems himself or herself disqualified for any reason. Upon the filing in good faith by a party of an affidavit of prejudice, the chief judge shall determine the matter as a part of the record . . . . A judge must be removed upon an affirmative showing of prejudice or bias.

Minn. R. 1400.6400 (2013). An ALJ who is the subject of a disqualification motion in a special-education hearing "enjoys a presumption of honesty and integrity, which is only rebutted by a showing of some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *A.M. v. District of Columbia*, 933 F. Supp. 2d 193, 206 (D.D.C. 2013) (quotation omitted). As the party alleging bias, it is Williams's burden to show prejudice or bias. *See id.*; Minn. R. 1400.6400.

Williams contends that the Chief ALJ erred because the assigned ALJ was biased against her. Williams asserts that the hearing was "surreal" because the ALJ yelled at her and "mocked and scolded" her for not having a lawyer's expertise. Williams also asserts that the ALJ asked the court reporter to delete conversations from the record. Williams asserts further that the ALJ gave the district an advantage by taking a recess after her testimony, which unfairly gave the district time to prepare for cross-examination.

Our review of the hearing transcript does not corroborate Williams's contentions. Throughout the hearing, the assigned ALJ was patient with Williams, a self-represented party. The ALJ helped Williams introduce evidence and made favorable rulings on her objections. The ALJ also allowed Williams to provide narrative testimony at length. Williams's assertions of bias are focused on a few unfavorable rulings on objections and

11

instances in which the ALJ took steps to maintain decorum.  Williams did not meet her burden of proving that the ALJ was biased.  Thus, the Chief ALJ did not err by denying Williams's motion.

Williams also contends that the Chief ALJ was not an impartial decisionmaker with respect to the disqualification motion because of her professional association with the assigned ALJ.  This contention fails because the applicable rule requires the Chief ALJ to rule on a disqualification motion, despite the fact that the Chief ALJ is a colleague of the assigned ALJ.  *See* Minn. R. 1400.6400.  Thus, the Chief ALJ did not err by ruling on Williams's motion.

**Affirmed.**