**SOUTHERN MINNESOTA CONSTRUCTION CO., INC., et al., Appellants,**

v.

**MINNESOTA DEPARTMENT OF TRANSPORTATION, et al., Respondents,**

International Union Of Operating Engineers Local 49, Intervenor.

No. C4–01–999.

Court of Appeals of Minnesota.

Jan. 2, 2002.

Gerald S. Duffy, Robert F. Rode, Siegel, Brill, Greupner, Duffy Foster, P.A., Minneapolis, for appellants.

Mike Hatch, Attorney General, Kelly S. Kemp, Assistant Attorney General, St. Paul, for respondents.

Paul W. Iversen, Williams & Iversen, P.A., Roseville, for intervenor.

Considered and decided by RANDALL, Presiding Judge, AMUNDSON, Judge, and HARTEN, Judge.

## OPINION

HARTEN, Judge.

Appellants, construction companies, brought a declaratory judgment action against respondent Minnesota Department of Transportation (MinnDOT), seeking a declaration that MinnDOT did not have the authority under Minn.Stat. § 177.44, subd. 7, to conduct independent administrative enforcement actions of the prevailing wage act, Minn.Stat. §§ 177.41–.44. Appellants contend that MinnDOT may only investigate violations and refer them to county attorneys for prosecution.[1] The district court concluded that MinnDOT had authority to conduct enforcement actions but granted summary judgment dismissing the declaratory action for lack of jurisdiction because appellants' action was premature. Appellants challenge the summary judgment.

## FACTS

Appellants Southern Minnesota Construction Co., Inc., (SMC), et. al.,[2] are construction companies in the highway construction business and aggregate business that were awarded contracts as the lowest responsible bidders for their respective highway projects. Shortly after SMC completed the construction project at issue, MinnDOT notified SMC by mail that it had investigated each project and determined that all employees at an off-site crushing plant used to provide aggregate materials were covered by the prevailing wage act because the plant did not meet the exemption criteria set forth in Minn. Stat. § 177.44, subd. 2 (2000). The letter also explained that, as the prime contractor, SMC was required to ensure that all of its employees and any subcontractor's employees covered by the prevailing wage act received the correct certified wage rate for the classification of labor they performed and to submit the names of these employees to the project engineer on a certified payroll.

In a series of letters, SMC opined that MinnDOT's determination was in error and MinnDOT explained the basis for its determination. After SMC failed to make the requested corrections within the time allotted, MinnDOT ordered SMC to pay the employees in accordance with the prevailing wage act. The letter ordering the payment provided for an administrative hearing if SMC disagreed with MinnDOT's determination. SMC responded in writing by requesting either that the county attor-

---

1. Because we conclude that MinnDOT did have administrative authority under Minn. Stat. § 177.44, subd. 7, we do not address appellants' argument that the statute is void for vagueness.

2. SMC's situation is shared by the other appellant construction companies.

ney of the county in which the work was located investigate and prosecute or that there be an administrative hearing, "whichever is the statute in this matter."

Administrative contested case actions were commenced against appellants. While administrative proceedings before the Office of Administrative Hearings (the OAH) were pending, appellants brought an action for declaratory judgment and a permanent injunction to halt the administrative proceedings and to prohibit MinnDOT from enforcing the prevailing wage act. The International Union of Operating Engineers Local 49 (the union) subsequently intervened.

On February 14, 2001, a hearing was held on the parties' cross-motions for summary judgment. On April 11, 2001, the district court granted summary judgment to MinnDOT and the union, dismissing all of appellants' claims. This appeal followed.

## ISSUES

1. Did the district court properly determine that MinnDOT has statutory authority to conduct administrative proceedings to enforce the prevailing wage act?

2. Did the district court properly determine that it lacked jurisdiction because appellants' action was premature?

## ANALYSIS

### 1. Statutory Construction

■ The central issue is whether MinnDOT is authorized to use administrative procedures to enforce the prevailing wage act. Without statutory authority, administrative agencies such as MinnDOT cannot independently enforce a statute. *McKee v. County of Ramsey*, 310 Minn. 192, 195, 245 N.W.2d 460, 462 (1976). Thus, MinnDOT's authority must derive from the statute. Construction of statutes is a question of law that we review de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn. 1998).

■ The enforcement provision of the prevailing wage act states:

The department of transportation shall require adherence to this section. The commissioner of transportation may demand and every contractor and subcontractor shall furnish copies of payrolls. The commissioner of transportation may examine all records relating to hours of work and the wages paid laborers and mechanics on work to which this section applies. Upon request of the department of transportation or upon complaint of alleged violation, the county attorney of the county in which the work is located shall investigate and prosecute violations in a court of competent jurisdiction.

Minn.Stat. § 177.44, subd. 7 (2000). SMC argues that this statutory language clearly and unambiguously provides that the statute is to be enforced by the county attorney of the county where the work is located. SMC claims that the statute creates a partnership between MinnDOT and the county attorneys in which MinnDOT's role is merely to gather information regarding hours worked. SMC construes the first sentence, "[t]he department of transportation shall require adherence to this section" as a general grant of authority to ensure that contractors adhere to the prevailing wage law. SMC then construes the second and third sentences and part of the fourth sentence as specifying how MinnDOT may require adherence (by demanding records, examining them and making requests to the county attorney to prosecute violators), and construes the remainder of the fourth sentence as revealing the other half of the partnership between

MinnDOT and county attorneys and granting county attorneys authority to enforce the statute by criminal prosecution.

■ But "[a] statute should be construed so no phrase is superfluous, void, or insignificant." *Weber v. Hvass,* 626 N.W.2d 426, 432 (Minn.App.2001) (quotation omitted), *review denied,* (Minn. Jun. 27, 2001). SMC's construction effectively renders the first sentence superfluous. Although SMC argues that the effect of this provision is "to bestow statutory power upon MinnDOT," it fails to articulate what power that sentence bestows. Given that the balance of section 177.44, subd. 7, includes specific grants of authority, we think it incongruous to construe the first sentence as doing no more than signal that the subsequent sentences will generally involve MinnDOT.

In contrast, MinnDOT's construction gives each sentence meaning. The first sentence, stating that MinnDOT "shall require adherence" to the act, grants Minn-DOT broad authority to enforce the statute through administrative proceedings. The second and third sentences specify how company records are to be gathered and reviewed. The fourth sentence provides for county attorney enforcement of the prevailing wage act's criminal provisions, either independently or upon reference from MinnDOT.

SMC notes that, in *L & D Trucking v. Minnesota Dept. of Transp.,* 600 N.W.2d 734 (Minn.App.1999), *review denied,* (Minn. Oct. 12, 1999), we questioned Minn-DOT's authority to enforce the act through administrative procedure. *See id.* at 737, n. 3 (noting that the prevailing wage law "provides for enforcement in the district court of the county in which the work was located"). But in *L & D Trucking,* we specifically noted that section 177.44, subd. 7, charges MinnDOT with enforcement of the act. *Id.* at 736. Furthermore, the footnote at issue specifically states that none of the parties in *L & D Trucking* challenged MinnDOT's enforcement procedures. *Id.* at 737 n. 3. Accordingly, the situation that gave rise to the *L & D Trucking* footnote is distinguishable. Moreover, construing the fourth sentence of the statute as creating a system of shared responsibility for enforcement, as per the *L & D Trucking* footnote, would be to ignore the context of the statute. Section 177.44 provides for both civil enforcement and criminal penalties in order to compel adherence.

■ Next, SMC argues that, even if the statute grants authority to "require adherence," it does not grant broad authority to employ contested case administrative proceedings. But agencies may make case-by-case determinations when they are charged with enforcement of a statute, and we have already declared this to be appropriate under the prevailing-wage act. *See id.* at 736–37.

Finally, SMC argues that, because MinnDOT has the authority to compel county attorneys to prosecute violations, its authority to "require adherence" refers only to this power of referral. But, although criminal convictions may provide for punishment, they do not ensure adherence to the prevailing wage law. Accordingly, the first sentence does not refer solely to MinnDOT's "power of referral" for criminal prosecution.

We conclude that the district court did not err in concluding that MinnDOT has statutory authority to construct administrative proceedings to enforce the prevailing wage act.

**2. Jurisdiction**

■ The district court also determined that the declaratory judgment action was premature because the OAH had not made

any final orders, nor had the commissioner made a final decision on any of the administrative proceedings; therefore, any injuries were merely hypothetical and did not establish a justiciable controversy.

■ SMC argues that its claim is not premature under the declaratory judgment act. That act permits

> [a]ny person * * * whose rights, status, or other legal relations are affected by a statute * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status, or other legal relations.

Minn.Stat. § 555.02 (2000). But if the parties to a declaratory action present no justiciable controversy, the court is without jurisdiction to declare rights. *St. Paul Area Chamber of Commerce v. Marzitelli,* 258 N.W.2d 585, 587 (Minn.1977). Possible or hypothetical injuries are not enough to establish a justiciable controversy. *Kennedy v. Carlson,* 544 N.W.2d 1, 6 (Minn.1996). Although the controversy need not be current in order to be justiciable, there must be at least "a bona fide legal interest which has been, or with respect to [which] the ripening seeds of a controversy is about to be, affected in a prejudicial manner." *Rice Lake Contracting Corp. v. Rust Environment and Infrastructure, Inc.,* 549 N.W.2d 96, 99 (Minn. App.1996) (quotation omitted), *review denied,* (Minn. Aug. 20, 1996). Until the administrative action ripens, it is premature to say that appellants' legal interests are prejudicially affected. SMC rights are not affected by the statute until MinnDOT makes its final determination.

SMC argues that its rights are "affected" by the very fact that it must go through an administrative process that it believes to be wholly unauthorized. But section 555.02 does not provide for declaratory judgment of rights before the agency has made its determinations.[3] Before MinnDOT instituted administrative proceedings, SMC could have brought a declaratory judgment action, but once administrative proceedings had begun, SMC's right to bring a declaratory action to arrest those proceedings was foreclosed. Once "enforcement" begins, the proper judicial review is by certiorari of the commissioner's final determination.

■ A party to an administrative proceeding is not entitled to judicial review of an administrative agency's act or decision—even regarding its own jurisdiction—unless the party has exhausted its administrative remedies. *Thomas v. Ramberg,* 240 Minn. 1, 4–6, 60 N.W.2d 18, 20–21 (Minn.1953). SMC is now a party to ongoing administrative proceedings. As such, the district court correctly determined that it was without jurisdiction to intervene.

## DECISION

The district court properly determined both that MinnDOT has statutory authority to conduct administrative proceedings with regard to alleged violations of the prevailing wage act and that, in any event, it did not have jurisdiction of appellants' declaratory judgment action.

**Affirmed.**

---

**3.** In contrast, the statute providing for declaratory judgments for the determination of the validity of an agency rule, Minn.Stat. § 14.44 (2000), specifically provides for declaratory judgment action where the "threatened application" of a rule interferes with the legal rights of a petitioner. Language pertaining to ongoing agency action is conspicuously absent from section 555.02.