681 N.W.2d 706 (2004)
AAA STRIPING SERVICE CO., Appellant,
v.
MINNESOTA DEPARTMENT OF TRANSPORTATION, Respondent,
Minnesota Department of Labor and Industry, Respondent.
No. A03-622.
Court of Appeals of Minnesota.
June 29, 2004.
*709 Gregg J. Cavanagh, Maple Grove, MN, for appellant.
Mike Hatch, Attorney General, Michael A. Sindt, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Department of Transportation.
Julie A. Leppink, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Department of Labor and Industry.
Considered and decided by TOUSSAINT, Chief Judge; MINGE, Judge; and HUSPENI, Judge.[*]

OPINION
MINGE, Judge.
Appellant subcontractor challenges summary judgment for respondents Minnesota *710 Department of Transportation (MnDOT) and Department of Labor and Industry (DOLI)[1] in appellant's action for declaratory relief, injunctive relief, and damages on claims that the state violated the Minnesota Prevailing Wage Law (MnPWL), DOLI's regulations, and the Minnesota Administrative Procedures Act (MAPA) and was equitably estopped from enforcing its classifications of appellant's employees. Because the state failed to observe required procedures and because there are disputed facts that affect the outcome of the procedures, we reverse.

FACTS
Appellant AAA Striping Service Company (AAA) is a pavement-marking subcontractor whose principal service is the application of stripes and messages to road surfaces. It performs work on both federal and state funded projects.
AAA has named its employees who perform this work "stripers" and "striper tenders." The striper drives the truck containing a marking machine; operates the machine that applies striping materials, such as epoxy, paint, and traffic tape, to the road surface; and, in some cases, operates a machine that sprays paint over stencils to create pavement messages. In some settings, one striper drives the truck and a second operates the marking machine, and in other settings, the same employee does both functions. The stripers do not select the material or use discretion in the placement of the material to the road surface. According to AAA, the position does not require education or experience; rather, on-the-job training, consisting of no more than four hours of instruction, is all that is needed to perform the job.
Striper tenders follow the striping truck in a second truck and place traffic cones on the roadway around the fresh striping material and remove the cones after the adhesive has set or the paint has dried. The striper tenders further assist in applying pavement messages by placing and removing the stencils on the roadway. They do not select the stencils and cones used or determine where they are placed. According to AAA, the striper tenders do not require experience or education and their training is limited to one hour.
AAA works on highway projects that are financed with state funds or both federal and state funds. In the absence of federal financing, AAA is subject to the MnPWL, requiring the payment of state established prevailing wages to employees in accordance with an established job classification list. See Minn.Stat. § 177.44 (2002). Projects financed by both federal and state funds are covered by both the MnPWL and the federal Davis-Bacon Act, which requires AAA to pay federally established prevailing wages to its employees. See 40 U.S.C. § 276a (2000). In jointly funded situations, a contractor must pay its employees the higher of the prevailing wage rates. This case involves projects financed with only state funds.
The purpose of the MnPWL is to ensure that those who work on projects financed in whole or in part by state funds are paid wages comparable to wages paid for similar work in the community. Minn.Stat. § 177.41 (2002). Under the MnPWL, DOLI establishes the labor classifications for workers and determines the prevailing wage rates for the classifications. Minn. Stat. § 177.44, subds. 3, 4. Wages must be based on work performed solely within the applicable class of labor. Minn. R. 5200.1030, subp. 2 (2003).
*711 DOLI has identified over 140 categories of work in a list of Master Job Classifications. Minn. R. 5200.1100 (2003). Prior to 1997, there was no procedure for setting wage rates under the MnPWL for jobs that did not appear on this list. In 1997, DOLI adopted a regulation for establishing wage rates for unlisted classifications, which, among other steps, requires a rulemaking procedure to define the category in the Master Job Classification. See Minn. R. 5200.1030, subp. 2a.C (2003). DOLI's class determinations are to be based on the nature of the work performed, with consideration given to the traditional trades, crafts, occupations, skills, customs, usage, and distinct classes of labor in the construction industry, and consideration of classifications in collective bargaining agreements, apprenticeship agreements filed with DOLI, and the United States Department of Labor Dictionary of Occupational Titles. Minn. R. 5200.1040 (2003). On road construction projects, MnDOT enforces the prevailing wage rates so set by DOLI. Minn.Stat. § 177.44, subd. 7 (2002).
Stripers and striper tenders have never been included in the Master Job Classification by those names or by job description. However, the appropriate classifications of such positions have been an issue on several occasions. In 1995, MnDOT published a Notice to Bidders stating that the common laborer classification applied to workers who engaged in traffic control functions, such as road striping and cone setting. After MnDOT informed AAA that it owed back wages based on this classification, AAA responded that it did not perform traffic control work, that its employees were not common laborers, and that it was not covered by the notice. In June 1997, MnDOT rescinded the Notice to Bidders.
In August 1997, the assistant Minnesota Attorney General and manager of the office's transportation division sent a letter to AAA that stated that there was "no established labor classification for stripers" and that the issue would be submitted to the U.S. Department of Labor (DOL)[2] for resolution, and added the following statement:
With respect to MnDOT projects with only state funds, MnDOT intends to comply with the procedures set forth in the newly-adopted regulations of the Department of Labor and Industry for establishment of new or missing wage rates. The determination in those cases will be applied prospectively.
This is an apparent reference to Minn. R. 5200.1030, subp. 2a.C, which was adopted in 1997. Although there is no evidence of further communication between AAA and MnDOT, in June 1998, MnDOT circulated an internal memorandum stating that employees who painted roads from vehicles were covered by the truck driver classification, *712 employees who painted roads by hand were classified as painters, and employees who set cones were common laborers. MnDOT never enforced such rates against AAA.
There is also some evidence of county MnPWL enforcement efforts. In 1999, the Washington County Public Works Department informed AAA that, based on a directive from DOLI, its stripers had to be paid the painter rate. When AAA challenged this determination, Washington County relented, stating "technically there was no actual `Striper' classification and that the State would not be able to enforce the `Painter' classification." In 2001, Washington County attempted to enforce the bituminous spray operator and common laborer rates to the striper and striper tender positions. AAA disputed these rates and did not hear from Washington County again.
On July 30, 2001, DOLI published a notice in the state register requesting comments on its plan to add amendments to the Master Job Classification to create new classes for or alter existing classifications for several types of work, including the painting and striping of roads. 26 Minn. Reg. 107 (July 30, 2001). The president of AAA testified at a February 28, 2002, meeting on the subject. However, proposed rule changes have never been announced, and it appears that proceeding is still pending.
In August and September 2001, MnDOT informed AAA that it should have paid its stripers the painter rate and its striper tenders the common laborer rate. AAA disputed those classifications. At the end of November 2001, MnDOT notified the general highway contractors for which AAA was a subcontractor that AAA violated state law by underpaying its employees during the years 1998 to 2001. MnDOT demanded that the general contractors pay the prevailing wages owed by AAA using the painter and skilled laborer rates.[3] MnDOT also mailed the contractors a letter from DOLI, which stated that for more than a decade DOLI had treated the positions of stripers and striper tenders as included in the painter and common laborer classifications. No written evidence of DOLI's actual adoption of that position or the date of such action is in the record.
On May 8, 2002, AAA entered into a stipulation with the state in which it agreed to pay back wages to its employees while maintaining all its rights under the MnPWL and the state agreed to terminate further action against the general contractors. AAA ultimately reimbursed its general contractors and paid back wages at a total cost of $35,070. AAA then commenced this action against the state to recover that amount as damages on the basis of equitable estoppel, for a declaratory judgment that DOLI's classifications were improper, and for injunctive relief prohibiting the state from further enforcing these classifications.
After extensive discovery, the parties filed cross-motions for summary judgment. Incident to these motions, voluminous transcripts of depositions, affidavits and exhibits were filed. The record includes testimony from the state that for more than 10 years DOLI had consistently classified stripers as painters and striper tenders as skilled laborers. Evidence also includes testimony that during this time the state had sought to apply the different and inconsistent classifications earlier discussed, information that the federal government *713 applied different classifications, and the August 27, 1997, letter from the attorney general's office stating that there was not an established classification. Also included in the record were two union contracts (one referred to the painting of traffic lines on highways; a second did not), a summary of a painter apprenticeship program that did not include any highway marking work, and pages from the Dictionary of Occupations which do not link painters with highway marking work. Also part of the record was a transcript from the rulemaking hearing in which AAA's president testified.
The district court found that DOLI had discretion to include stripers and striper tenders in existing painter and skilled laborer classifications without engaging in rulemaking, that there was adequate evidence to support that decision, and that MnDOT could enforce such determinations. The district court granted the state's motions for summary judgment and dismissed all of AAA's claims.

ISSUES
1. Should this court apply the doctrine of primary jurisdiction or exhaustion and defer consideration of the classification issues in this proceeding to DOLI?
2. Was the remedy of declaratory judgment available to AAA?
3. Was DOLI required to engage in an administrative proceeding to classify AAA's employees?
4. Did the district court err in granting summary judgment?

ANALYSIS

I.
The first and unavoidable question this court faces is the extent to which the issues presented are appropriate for judicial review. It does not appear that agency action was based on an identifiable record that was available for the district court to review. Rather, there is a claim of administrative inaction or improper action under the MnPWL, accompanied by a complex record that has only been built through discovery in the district court proceeding. The principles of primary jurisdiction and exhaustion are relevant in this setting.

A. Primary Jurisdiction
The Minnesota Supreme Court has described and defined primary jurisdiction in the following terms:
The doctrine of primary jurisdiction is a judicially created doctrine concerned with the orderly and sensible coordination of the work of agencies and courts. Its application promotes proper relationships between the courts and administrative agencies charged with particular regulatory duties, and is used whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. Use of the doctrine ensures, first, that agencies are not passed over in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, and then, that uniformity and consistency result. The doctrine is inapplicable if the issues raised are inherently judicial, unless the legislature has explicitly granted exclusive jurisdiction to the administrative body.
City of Rochester v. People's Coop. Power Ass'n, 483 N.W.2d 477, 480 (Minn.1992) (citations and quotations omitted.); see also 2 Richard J. Pierce, Jr., Administrative Law Treatise, § 14 (4th ed.2002).
In this proceeding, DOLI and MnDOT are the parties primarily responsible *714 for classifying employees and enforcing wage rates pursuant to the MnPWL. The initial question is whether the doctrine of primary jurisdiction compels this court to refer this proceeding to DOLI. The logic of primary jurisdiction requires an administrative process to which the courts may defer. In this case, AAA alleges that there is a rulemaking process, which DOLI established in Minn. R. 5200.1030, subp. 2a.C, that it was not used, and that the state should use this process to create classes of workers for stripers and striper tenders. The state argues that this rulemaking process is discretionary, that long ago DOLI decided to place stripers and striper tenders in the existing classes of painters and skilled laborers, and that there is no state procedure available to AAA.[4] Under the present circumstances, there is either no administrative process to which this court can defer primary jurisdiction or the process is ineffective.
Equally important, neither party has raised the primary jurisdiction issue. Typically, when the parties have not raised the primary jurisdiction issue, courts have not resorted to use of the doctrine. Although there are no Minnesota cases addressing this question, it has come up in other jurisdictions. See Pierce, supra, at 927-28 (citing cases to the effect that parties can waive primary jurisdiction). Although there is conflicting caselaw to the effect that parties cannot waive the doctrine and that courts can sua sponte raise the issue, the doctrine should be invoked sparingly as it results in added expense and delay. Red Lake Band of Chippewa Indians v. Barlow, 846 F.2d 474, 476 (8th Cir.1988). In light of the state's claim that there is no required agency process available to AAA, the parties' failure to raise the issue of primary jurisdiction, and the already lengthy appeal, we conclude that it would be inappropriate for this court to dispose of this case by using the doctrine to refer the case back to DOLI.

B. Exhaustion
Similar to the doctrine of primary jurisdiction is the principle of exhaustion. Exhaustion of administrative remedies requires that a party seeking judicial relief from a decision of an administrative body must first exhaust the right to seek relief within that body. See City of Richfield v. Local No. 1215 Int'l Ass'n of Fire Fighters, 276 N.W.2d 42, 51 (Minn. 1979) (explaining doctrine of exhaustion of administrative remedies). DOLI's classification of stripers as painters and striper tenders as skilled laborers and MnDOT's enforcement of these classifications were not challenged through contested case hearings or completed rulemaking proceedings before AAA commenced its declaratory judgment action in district court. At this court's direction, the parties submitted supplemental briefs on the issues of whether AAA was required to exhaust administrative remedies before seeking judicial review, and whether the proper method of obtaining judicial review would have been a certiorari appeal from the final agency decision, rather than a declaratory judgment action.
MnDOT has statutory authority to conduct administrative proceedings or to request criminal action with regard to alleged violations of the MnPWL. Minn. Stat. § 177.44, subd. 7; S. Minn. Constr. Co. v. Minn. Dep't of Transp., 637 N.W.2d 339, 343 (Minn.App.2002). MnDOT initiated administrative enforcement proceedings against approximately 40 of AAA's *715 contractors to compel the contractors to pay prevailing wages for stripers and striper tenders employed by AAA. MnDOT, however, did not bring an enforcement action directly against AAA. MnDOT and AAA resolved the enforcement action by settlement. Under the terms of the settlement agreement, AAA paid back wages to 48 of its employees, but did not concede that it owed the back wages and reserved its right to pursue a declaratory judgment action in district court.
We conclude that the doctrine of exhaustion does not foreclose AAA's declaratory judgment action because MnDOT, in enforcing the MnPWL directly against the contractors, did not institute an administrative action through which AAA could have clearly challenged enforcement of the wage rates in a contested case proceeding. Furthermore, the state denies that there is an administrative remedy available to AAA to challenge DOLI's inclusion of stripers and striper tenders in the painter and skilled laborer classifications. Finally, no criminal enforcement has been sought.
Because AAA was not included in a MnDOT enforcement proceeding, and because AAA did not have an opportunity to participate in an administrative proceeding under Minn.Stat. § 177.44, AAA was entitled to seek judicial review of the classification by a declaratory judgment action. Exhaustion is therefore not relevant.

II.
The next issue is whether the remedy of a declaratory judgment was available to AAA. The state argues that AAA could have obtained judicial review of DOLI's classification decision by a certiorari appeal to this court, and that accordingly, declaratory judgment is inappropriate. Absent an established method of review or other clear legal remedy, judicial review of the quasi-judicial decisions of administrative bodies must be invoked by writ of certiorari. Dietz v. Dodge County, 487 N.W.2d 237, 239 (Minn.1992). If a certiorari appeal is available, a declaratory judgment action will not be considered. See Dokmo v. Indep. Sch. Dist. No. 11, 459 N.W.2d 671, 677-78 (Minn.1990) (concluding that where a writ of certiorari is the appropriate method to obtain review, district court lacked subject matter jurisdiction to decide declaratory judgment action).
Certiorari is not available to review quasi-legislative administrative actions. Minn. Ctr. for Envtl. Advocacy v. Metro. Council, 587 N.W.2d 838, 842 (Minn.1999). The three indicia of quasi-judicial actions are: "(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim." Id. Failure to meet any of the three indicia is fatal to a claim that the proceedings were quasi-judicial. Id. at 844.
MnDOT mailed AAA's contractors a copy of a November 5, 2001, letter from DOLI stating that for more than a decade, DOLI had treated the positions of stripers and striper tenders as included in the painter and skilled laborer classifications. Certiorari review of DOLI's classification would only have been available if this determination was a "quasi-judicial" act. But MnDOT's decision to include the positions of stripers and striper tenders in the painter and skilled laborer classifications was a policy determination rather than a binding decision after investigation into a disputed claim. See Press v. City of Minneapolis, 553 N.W.2d 80, 83-84 (Minn.App. 1996) (finding that a municipal board's interpretation of an ordinance did not involve quasi-judicial conduct). Because a certiorari appeal was not available, we conclude that the district court had subject *716 matter jurisdiction to hear AAA's declaratory judgment action.

III.
The next issue we face is whether DOLI is obligated to engage in rulemaking or another agency process such as a contested case proceeding to determine job classifications for purposes of the MnPWL and what rights AAA, as a party aggrieved by a classification determination, has to demand such agency process. The law requires classification of employees of a similar trade or occupation performing specified work on road construction work financed with state funds. Minn.Stat. § 177.44, subds. 1, 3, 4. This obligation clearly applies to the employees of AAA known as stripers and striper tenders. The dispute is over what administrative process must be undertaken in making the required classification. The statute provides as follows:
Subd. 3. Investigations by department of labor and industry. The department of labor and industry shall conduct investigations and hold public hearings necessary to define classes of laborers and mechanics and to determine the hours of labor and wage rates prevailing in all areas of the state for all classes of labor and mechanics commonly employed in highway construction work, so as to determine prevailing hours of labor, prevailing wage rates, and hourly basic rates of pay.
Minn.Stat. § 177.44, subd. 3. The 1997 regulations adopted by DOLI further provide that:
If work is performed by a class of labor not defined by part 5200.1100, Master Job Classifications, the contracting agency shall assign a wage rate and the Commissioner of Labor and Industry shall review and certify the assigned wage rate based on the most similar trade or occupation from the area wage determination. Within 90 days, the Commissioner of Labor and Industry must initiate the rulemaking procedure so that the classification will be defined in the Master Job Classifications in part 5200.1100.
Minn. R. 5200.1030, subp. 2a.C; see 21 Minn. Reg. 1107 (Feb. 3, 1997) (adopting regulations).
The Master Job Classification contains no position uniquely applicable to the work of stripers or striper tenders. In these circumstances, the state asserts that its agencies operated appropriately in placing the striper in the pre-existing category of painters and striper tenders in the pre-existing category of skilled laborers. The state argues that AAA is not entitled to specific classification for its employees or a separate hearing and rulemaking procedure on each type of employee. It argues that if DOLI were required to engage in rulemaking for every employer who claimed that it had a new category of employee not covered by existing prevailing wage classifications, DOLI could be overwhelmed with such proceedings. AAA claims, however, that since the work of its stripers and striper tenders does not bear a reasonable resemblance to the painter and skilled laborer classifications, such re-classification efforts are both required and appropriate in this setting. By implication, AAA further argues that if the required rulemaking process is not observed, at least a contested case hearing should be available to obtain agency reconsideration of the decision not to engage in rulemaking.
The MnPWL is clear that if an interested person disagrees with an hour or wage determination by DOLI, that person can request reconsideration by DOLI and, if still unsatisfied, can request a contested case proceeding under the MAPA. Minn. *717 Stat. § 177.44, subd. 4. Although there is no statutorily mandated parallel procedure for disputes regarding classification, AAA argues that DOLI has created such a process by adopting the 1997 change in its regulations. See Minn. R. 5200.1030, subp. 2a.C. According to this regulation, the classification process has four separate components: (1) the contracting agency, in this case MnDOT, determines whether the work is already included in an existing classification; (2) the agency, here MnDOT, sets a wage rate for the position that is not already defined; (3) DOLI reviews the MnDOT wage rate based on the most similar trade or occupation; and (4) DOLI initiates a rulemaking procedure to assure that the position will be defined in the Master Job Classification list. Id.
This procedure was established by DOLI, is reasonably designed to assure fair decision making in resolution of disputes, and ties into the concept of rulemaking as it is covered by the MAPA. See Minn.Stat. §§ 14.001-.69 (2002 & Supp. 2003). DOLI does not disagree that this formal process exists and that it has an obligation to use that process. It only disagrees as to whether the process applies to every claim that a worker or type of work is unique. DOLI asserts that it is entitled to flexibility and discretion to depart from formal rulemaking when it deems the situation clear. This argument is persuasive. The question is whether this discretion creates a procedural void allowing DOLI to act without accountability and prevents interested parties, such as AAA in this proceeding, from having any remedy from improper decisions.
To determine whether and to whom DOLI is accountable for decisions not to follow through with rulemaking, we note the importance of classification and the context in which such decisions are made. Workers, labor unions, contractors, subcontractors (including AAA), and perhaps even local units of government, have a substantial interest in the classification process. Fair wages, workers' livelihoods, the financial feasibility of projects, and entrepreneurial opportunities for contractors may be affected by these decisions.[5] The statutes mandate investigation and hearings necessary to define worker classifications. Minn.Stat. § 177.44, subd. 3. This is strong legislative directive to observe the basics of procedural due process in making classification decisions. We conclude that at a minimum, DOLI should engage in rulemaking as specified in its own regulation or, in the alternative, make available a reconsideration process with a contested case proceeding when requested by an aggrieved party. Like judicial proceedings, such a contested case proceeding can be abbreviated if the nature of the matter justifies summary action. To say that the decision to include striper and striper tenders in an existing classification is entirely within the discretion of DOLI, that it can exercise this discretion without a record or a hearing, and that there is no review available is inconsistent with DOLI's own rules, the statutes, and with the principles of procedural due process.
We have already noted that DOLI has actually commenced a rulemaking proceeding to consider changes to the Master Job *718 Classifications used in the MnPWL for several types of work including "new classes or altering the classifications applying to painting and striping of roads...." But it is unclear whether that proceeding was triggered by or is consistent with Minn. R. 5200.1030, subp. 2a.C. In any event, almost three years later this rulemaking process is unfinished and possibly dormant. Under these circumstances, this arguably pending rulemaking does not constitute compliance with DOLI's obligations.
We conclude that under DOLI's own regulations and the statutes, AAA was entitled to administrative review of the classification of its striper and striper tender employees for purposes of the MnPWL and that such review has not been provided. For prospective classification of these employees, we expect that either DOLI will engage in such administrative action through rulemaking or that it will offer reconsideration of informal action. Although in the present situation rulemaking may be most appropriate, we conclude that DOLI has the discretion and responsibility for deciding the procedure best suited for making decisions. The other claims related to the classification question are addressed below.

IV.
Summary judgment is appropriate when there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. In reviewing an appeal from summary judgment, this court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the law. State by Cooper v. French, 460 N.W.2d 2, 4 (Minn. 1990). If genuine issues of material fact exist, the parties' cross-motions for summary judgment will not obviate the need for a trial on the factual questions. Home Mut. Ins. Co. v. Snyder, 356 N.W.2d 780, 783 (Minn.App.1984). Construction of statutes is a question of law reviewable de novo. S. Minn. Constr. Co., 637 N.W.2d at 342.
The district court found that DOLI did not violate the MnPWL because DOLI was authorized to determine without rulemaking that AAA's employees were covered by the pre-existing painter and skilled laborer job classifications based on their function and because there was evidence supporting that determination. AAA argues that DOLI violated the MnPWL by determining job classifications for stripers and striper tenders without following the procedures in Minn. R. 5200.1030, subp. 2a.C, and that the facts do not support the classification.

A. Classification
Part of the summary judgment issue is whether the district court improperly upheld DOLI's classification of AAA's employees known as stripers and striper tenders. This court presumes that agency decisions are correct and shows deference to an agency's conclusions in the area of its expertise. Cable Communications Bd. v. Nor-West Cable Communications P'ship, 356 N.W.2d 658, 668 (Minn.1984). Agency decisions are reversed only when they reflect an error of law, the findings are arbitrary and capricious or unsupported by substantial evidence. Sunstar Foods, Inc. v. Uhlendorf, 310 N.W.2d 80, 84 (Minn. 1981). Substantial evidence means: "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; and (5) evidence considered in its entirety." Reserve Mining Co. v. Herbst, 256 N.W.2d 808, 825 (Minn.1977). If challenged by an interested *719 party, the classification of employees for purposes of Minn.Stat. § 177.44 must be supported by substantial evidence.
As already discussed, once DOLI adopted Minnesota Rule 5200.1030, subp. 2a.C, establishing a procedure for making classifications, DOLI's process for addressing the classification of the work done by AAA's striper and striper tenders was inadequate. Although this would appear to lead to the conclusion that the district court erred in granting summary judgment in favor of the state, the claim that the state's classification was made before the regulation was adopted in 1997 and the district court's determination that the regulation has an adequate factual basis leads us to further analysis of the question.
Viewing the record most favorably to the district court's grant of summary judgment, we recognize that the state asserted that for more than ten years DOLI has included employees doing the work of AAA's stripers and striper tenders in the classification of painters and skilled laborer helper. The court record in this proceeding included evidence that the stripers sometimes applied spray paint to road surfaces with stencils and machines. Also there was evidence that one union contract included painting road surfaces and work that was designated as the function of painters. On the other hand, AAA provided evidence that neither the Printers and Allied Trades Working Agreement for the Minneapolis area in effect from 1995 to 1998, nor the relevant painter apprenticeship agreement in effect in Minnesota, nor the U.S. Department of Laborers Dictionary of Occupational Titles, nor prevailing customs and usage in the industry support the proposition that the work of painters included highway marking work. It also appears from the district court record that on several occasions MnDOT and local units of government asserted that the work of AAA's striper and striper tenders was covered by job titles other than painter or skilled laborer. Furthermore, the U.S. Department of Labor included stripers in the class of truck drivers and operators of machines that apply tar on road surfaces and striper tenders in the class of landscapers.
The claim by DOLI that as of 2001 it had included the striper and striper tender positions in the painter and skilled laborer classifications for ten years is called into question by other circumstances. In 1997 MnDOT's legal counsel wrote to AAA's attorney stating that "there was no established labor classification for stripers" for federally funded projects undertaken by MnDOT, that the established procedure under federal law for establishing such classifications would be followed, and that with respect to MnDOT's state funded projects, "MnDOT intends to comply with the procedures set forth in the newly-adopted regulations of [DOLI] for establishment of new or missing wage rates." Significantly, the state did not furnish any written documentation of the DOLI decision to classify contractors' employees who did road marking that had been in effect for ten years and is now being enforced for the period between 1998 and 2001.
Rather, it appears that uncertainty existed in 2001, when MnDOT began to force AAA's prime contractors to pay the shortfall in wages the state claimed was owed to the striper and striper tender employees. Nothing in the record identifies when or how DOLI's classification "decision" now being enforced was made or gives a context for that decision. In this proceeding, AAA clearly called into question whether and how DOLI made any classification decision. In this situation, the state had the responsibility of establishing the existence of the actual classification decision and the circumstances of its *720 adoption by clear evidence. See Minn. Stat. § 14.365 (requiring agency to maintain certain records of the rulemaking procedure). Deference is due an agency's decisions when there is substantial evidence to support the decision. In re City of Owatonna's NPDES/SDS Proposed Permit Reissuance for Discharge of Treated Wastewater, 672 N.W.2d 921, 926 (Minn.App.2004). But it is impossible to determine if there is substantial evidence when there is no record of the agency decision or, in this case, its enforcement. Further, when there are conflicting facts that detract from the state's position, these facts must be considered in determining whether there is substantial evidence. Here the conflicting positions taken by the state on the existence or nature of the classification constitute such conflicting facts.
In this case, the district court deferred to the expertise and experience of DOLI, found that there was evidence sufficient to conclude that DOLI had not abused its discretion, and granted summary judgment in favor of the state. Without an agency record to review, with conflicting evidence, with an agency determination of unclear origins, and with a procedure that failed to meet the requirements of Minn. R. 5200.1030, subp. 2a.C, summary judgment was improper on procedural, legal and factual grounds. This question of classification of the striper and striper tender employees of AAA must be determined by the trier of fact based on a sufficient record. Given the status of the record, this appellate court cannot reach the merits of the litigation. On remand, the district court should determine when DOLI placed the work done by stripers and striper tenders in the painter and skilled laborer classes; what, if any, procedure was used to make that decision; and what record was available to the state for making that classification for the period between 1998 and 2001. The district court should consider the information supplied by AAA in its analysis and determine whether the state's classification was supported by substantial evidence on the record as a whole. If the district court concludes that no state classification was in effect or that it was not supported by substantial evidence, it shall determine the issue de novo, including appropriate relief in a declaratory judgment action. Injunctive relief against enforcement of such a rule until proper process is followed is one such appropriate remedy.

B. Estoppel/Damages
The final issue we face is whether the district court erred in granting summary judgment in favor of the state on the question of estoppel and AAA's claim for damages for wrongfully being forced to reimburse contractors and to pay claimed shortfall in wages. To establish a claim of equitable estoppel against the government, a party must prove five elements: (1) that the government made a misrepresentation of material fact; (2) that the government knew the misrepresentation was false; (3) that the government intended that its representation be acted upon; (4) that the other party did not know the facts; and (5) that the other party relied on the government's misrepresentation to their detriment. REM-Canby, Inc. v. Minn. Dep't of Human Servs., 494 N.W.2d 71, 74 (Minn.App. 1992), review denied (Minn. Feb. 25, 1993). "Affirmative misconduct, rather than simple inadvertence, mistake, or imperfect conduct is required for estoppel to be applied against the government." Id. Equitable estoppel should be applied sparingly against the government and only if the wrongful conduct threatens to work a serious injustice. Ridgewood Dev. Co. v. State, 294 N.W.2d 288, 292 (Minn.1980).
*721 AAA's equitable-estoppel claim is based on its claimed detrimental reliance on the state's August 1997 letter from the assistant Minnesota Attorney General. In addition to advising AAA that there was no established labor classification for stripers, the 1997 letter stated that MnDOT intended to comply with DOLI's procedures for establishment of new or missing wage rates, and that the determination would be applied prospectively. Such a representation may constitute a basis for promissory estoppel if it was materially false, if the state knew or should have known it was false, if the state intended that AAA rely on the representation, and if not knowing the error in the representation, AAA justifiably relied on that representation to its detriment.
The district court found that AAA failed to provide facts sufficient to support a claim of equitable estoppel because MnDOT did not make a misrepresentation in its letter to AAA. The district court based this conclusion on its analysis of the 1998 through 2001 contracts at issue, all of which contained bid proposals stating that the MnPWL would be enforced "notwithstanding any prior notices on this subject." But we conclude that there is a material fact issue regarding whether the general language in the bid proposals indicating that the MnPWL would be enforced constitutes a notice that MnDOT was reversing an express commitment made by a MnDOT attorney that MnDOT would prospectively apply DOLI's determination of a labor classification for stripers after following procedures in newly adopted regulations. There is also a material fact issue as to whether the representation was true and whether AAA justifiably relied on the August 1997 letter to its detriment in submitting its bids on state funded projects.
The burden is on the party moving for summary judgment to show the absence of an issue of material fact, and the reviewing court must view the evidence in the light most favorable to the nonmoving party. Fabio v. Bellomo, 504 N.W.2d 758, 761 (Minn.1993). Viewing the evidence in the light most favorable to AAA, we conclude that summary judgment was inappropriate because AAA demonstrated genuine issues as to material facts regarding the equitable-estoppel claim. See Leamington Co. v. Nonprofits' Ins. Ass'n, 615 N.W.2d 349, 355 n. 4 (Minn.2000) (noting that plaintiff does not have to prove its case to withstand summary judgment but need only demonstrate a genuine issue as to any material fact). In reversing summary judgment on this issue, we express no opinion regarding the question of whether AAA should ultimately succeed in its claim.

DECISION
Because the doctrine of primary jurisdiction is not applicable, because there were no administrative remedies for AAA to exhaust, and because DOLI's determination that stripers and striper tenders are included in the painter and skilled laborer classifications for purposes of the MnPWL was not reviewable by certiorari, the courts can properly hear AAA's declaratory judgment action. DOLI has an obligation to prospectively determine the classification of AAA's employees for prevailing wage purposes in a fashion that is consistent with its own rules and the import of the statutes. Summary judgment was inappropriate due to the lack of an agency record, uncertainty regarding the origin of the state's classification of employees who do road marking for purposes of MnPWL, material fact issues regarding DOLI's classification determination, and AAA's equitable-estoppel claim. The district court shall determine that classification for the relevant years of 1998 through 2001. If an agency record for the classification *722 is available, the district court shall review the classification based on the rules for judicial review of agency action. Otherwise the determination of the classification shall be de novo and appropriate relief shall be granted. The matter is remanded to the district court for proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
[1] Since both DOLI and MnDOT are agencies of the state of Minnesota, they will be jointly referred to as "the state" when both respondents are being referenced.
[2] Under the Davis-Bacon Act, DOL issues wage determinations that contain the prevailing wage rates for various classifications of employees within established geographical areas. 40 U.S.C. § 276a. When a particular classification is not included in the wage determination, DOL uses the following procedure for "conforming" a wage rate: (1) The contractor submits an application to pay the unlisted classification a particular rate if the proposed rate bears a reasonable relationship to an existing wage rate for a comparable job classification, and (2) DOL approves, modifies, or disapproves of the classification within 30 days of receipt. See 29 C.F.R. § 5.5(a)(2)(ii)(A)-(C) (2002).

The job titles "stripers" and "striper tenders" have not appeared in DOL's wage determinations. However, in accordance with its conforming procedure, DOL has determined that AAA may pay its stripers at the rate set for workers who drive trucks or operate machines that spray tar on surfaces to which bituminous material is to be applied and may pay its striper tenders at the landscaper rate. These rates are lower than that of painter and skilled laborer set by DOLI under the MnPWL.
[3] There was a second proceeding involving these parties pertaining to AAA's pre-1998 contracts. The proceeding was settled under the federal conformance procedures and is not relevant to the current proceeding.
[4] The state virtually ignores its three-year-old, unfinished rulemaking proceeding on possible classification of stripers and striper tenders.
[5] This type of right or interest may be entitled to constitutional due process protections. See Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) (holding that individuals receiving social security disability benefits have a statutorily created property interest in the continuing receipt of such benefits); Goldberg v. Kelly, 397 U.S. 254, 261-64, 90 S.Ct. 1011, 1017-18, 25 L.Ed.2d 287 (1970) (holding the same for individuals receiving federal welfare assistance). We do not reach this constitutional question.